Statement.

# Wytheville.

## EVANS AND ANOTHER V. RICE, TRUSTEE, AND OTHERS.

### JUNE 9, 1898.

Absent, Cardwell, J.

1. USURY—*Contracts Made for Purchase of Property Carrying Higher than Legal Rate of Interest.*—Usury can only attach to a loan of money, or to the forbearance of a debt. On a contract to secure the price or value of work and labor done or to be done, or of property sold, the contracting parties may agree on one price if cash be paid, or on a higher price if time be given, and this higher price may be either a lump sum, or a *per cent.* on the cash price. In neither case is the transaction usurious. It is not a loan of money, nor the forbearance of a debt, but simply the contract price of work and labor, or property sold.

2. USURY—*Proof Required to Establish—Case at Bar.*—Usury, when charged, must be proved by a clear and satisfactory preponderance of evidence. In the case at bar the only evidence on the subject is the testimony of the alleged borrower and of the lender, and this is conflicting. This is not sufficient to establish usury.

3. AGREEMENT TO PAY HIGHER THAN LEGAL RATE OF INTEREST—*How Long Rate Continues.*—Where a greater than the legal rate of interest is agreed on by the parties, on a debt to mature in the future, the greater rate continues, in the absence of an agreement to the contrary, after the maturity of the debt, and until it is paid.

4. AGREEMENT TO PAY A DEBT FROM PARTICULAR PROPERTY—*Liens—Purchasers—Assignees.*—An agreement by a debtor to pay a debt out of the proceeds of the sale of a particular piece of property does not constitute an assignment of, or lien upon such proceeds, but is only the personal covenant of the debtor. Nor can such an agreement affect a purchaser of the property who was ignorant of it, nor an assignee of the bonds given for the purchase price who had no notice of it.

Appeal from several decrees of the Circuit Court of Prince Edward county pronounced in a suit in chancery wherein the

appellant, E. L. Evans, was the complainant, and the appellees, and A. J. Davis, appellant, were the defendants.

*Affirmed.*

The opinion states the case.

*A. L. Holladay* and *C. 7. Baskerville*, for the appellants.

*J. P. Fitzgerald*, for the appellees.

KEITH, P., delivered the opinion of the court.

The facts of this case are as follows: In 1875 F. H. Scott and A. J. Davis purchased of C. C. Farley " lot No. 90," in the town of Farmville, Va., at the price of $3,500, and received from him a deed. On September 1, 1875, when the conveyance to them was made, Scott and Davis paid $500 in cash, and executed their bond for the remaining $3,000 of the purchase money in the following words :

"FARMVILLE, VA., Sept. 1, 1875.

" $3,000.

" Three years after date we promise and bind ourselves for value received to pay to C. C. Farley the just and full sum of three thousand dollars, with interest at the rate of eight per cent. per annum, payable annually. As witness our hands and seals.

(Signed)   A. J. DAVIS,   (Seal.)
(Signed)   F. H. SCOTT,   (Seal.)"

The payment of this bond was secured by a deed from Scott and wife and Davis and wife to W. D. Rice, trustee, of date September 1, 1875, upon " lot No. 90." In August, 1889, Scott and Davis sold and conveyed the Farmville Mills property to the Farmville Mills, a corporation, for $20,000, of which

$8,000 was paid in cash, and for the residue of the purchase price the Farmville Mills executed to Scott and Davis eight notes of $1,500 each, payable in from one to eight years after August 13, 1889. The record is silent as to the form of these notes. Anna D. Scott, the wife of F. H. Scott, united in the deed to the Farmville Mills Company under an agreement that she should be compensated for the relinquishment of her contingent right of dower. In pursuance of this agreement, on the 24th· day of August, 1889, Scott and Davis and Mrs. Davis conveyed to Anna D. Scott "lot No. 90," to be held by her as her separate estate. The deed declares upon its face that it was "for and in consideration that the said Anna D. Scott, who is the wife of said F. H. Scott, has, by uniting in a deed with the parties of the first part unto the Farmville Mills, relinquished her rights to dower in the property thereby conveyed, and in consideration further that she has, by deed of even date herewith, along with her said husband, conveyed all of her interest in a certain house and lot wherein she now resides, and in a portion of another lot more fully described in said deed."

This deed also contains a covenant in the following terms:

That Anna D. Scott is to hold the property conveyed to her "free from liability to be sold under a deed of trust to William D. Rice made to secure a debt to C. C. Farley for the purchase money, which said debt the said F. H. Scott and A. J. Davis covenant and agree shall be fully paid off and satisfied out of the proceeds of the sale to the Farmville Mills, and the said property released unto the said Anna D. Scott from the lien of said debt, and that all other liens on said property shall be paid off and satisfied by them, the said F. H. Scott and A. J. Davis, so that the said Anna D. Scott shall hold the property hereby conveyed free from any and all liens or encumbrances whatsoever."

On the 24th of September, 1889, Anna D. Scott borrowed $2,000 of the Planters Bank of Farmville, Va., for which she

gave a note drawn by John D. Scott, payable to her own order, and by her endorsed, and also endorsed by E. L. Evans, who claims to have been, and doubtless was, an accommodation endorser. This note was secured by a deed from Anna D. Scott and F. H. Scott, conveying "lot No. 90" to T. L. Morton, as trustee, and E. L. Evans claims that he was induced to become an endorser upon the note believing that the interest of Mrs. Scott in "lot No. 90" constituted an ample security for its payment, relying as he did upon the covenant of Scott and Davis to protect Mrs. Scott's title in "lot No. 90" out of the proceeds of sale of the Farmville Mills property. Large payments were, from time to time, made upon the bond of $3,000 to C. C. Farley, and also upon the note of $2,000 held by the Planters Bank. In obedience to directions given them by the holders of the bond and note secured in the respective deeds to them, W. D. Rice, trustee, and Morton, trustee, advertised "lot No. 90" to be sold on September 26, 1894, to satisfy an alleged balance on the Farley bond of $1,084.70, with interest on $1,061, a part thereof, from March 10, 1890, and an alleged balance on the $2,000 note held by the Planters Bank of Farmville of $1,491.66, with interest from March 24, 1890.

E. L. Evans, the endorser on the note held by the Planters Bank, filed his bill in September, 1894, setting out the above recited facts, praying that an injunction might be awarded to the sale; that the amount due upon the several debts might be correctly ascertained; and that Scott and Davis might be required out of the unpaid purchase money due for the Farmville Mills to comply with their covenant to pay off and satisfy all liens and encumbrances existing upon "lot No. 90" at the time that it was conveyed to Anna D. Scott.

To this bill the Planters Bank and Farmville Mills, and all others interested in the transactions narrated, were made parties.

A. J. Davis filed an answer, which he prays may be treated as a cross-bill, in which he alleged that the bond to C. C. Far-

ley, which had in the meantime been assigned to Creed Farley, whose interest is now represented by George F. Farley, his administrator, was for an usurious consideration, and asked for such relief as he would be entitled to upon proof of that charge.

The facts as heretofore stated are undisputed, and the only controversy with respect to the facts disclosed in the record arises upon the allegation of usury made in the cross-bill, and denied in the answers. The bond reserves eight per cent. interest upon its face—a rate of interest greater than that allowed by law. It is claimed, however, that it was not given for the "loan or forbearance of money or other thing"; that the $3,000 for which the bond was given and the eight per cent. interest reserved thereon together constituted a part of the purchase price on "lot No. 90," sold by C. C. Farley to Scott and Davis in 1875.

In *Graeme* v. *Adams*, 23 Gratt. 234, Judge Bouldin, delivering the opinion of the court, states the law as follows: ."Usury can only attach to a *loan* of money; or to the forbearance of a debt. It is well settled that on a contract to secure the price or value of work and labor done or to be done, or of property sold, the contracting parties may agree upon one price if cash be paid, and upon as large an addition to the cash price as may suit themselves, if credit be given; and it is wholly immaterial whether the enhanced price be ascertained by the simple addition of a lumping sum to the cash price, or by a per centage thereon. In neither case is the transaction usurious. It is neither a loan nor the forbearance of a debt, but simply the contract price of work and labor done or property sold."

All the judges concurred in the opinion rendered, and this clear and concise statement of the controlling principle has been from that time accepted as a correct exposition of the law on the subject. We are relieved, therefore, from the duty or necessity of looking elsewhere for guidance and in-

struction.   Such being the rule by which we are to be con-
trolled, what are the facts to which it is to be applied ?   And in
this connection, it is well to remember that usury when
charged must be strictly proved.   It is said in *Brockenbrough*
v. *Spindle*, 17 Gratt. 21, "that it should be proved beyond a
rational doubt to the contrary."   We should with reluctance
accept the sentence quoted as accurately expressing the degree
of proof required in such cases.   It seems to us somewhat
severe in its terms, but we are warranted, and indeed com-
pelled, to hold that usury must be proved by a clear and satis-
factory preponderance of evidence.

The written evidence in the record discloses nothing more
than that the bond in dispute was given as evidence of part of
the purchase price of the land sold, and that it reserves eight
per cent. interest upon its face.   Bearing upon the point under
consideration there is the testimony of but two witnesses : that
of A. J. Davis, who charges the usury, and that of C. C. Far-
ley, the original obligee in the bond, who denies it.   If the ac-
count given by Davis is to be accepted, then it was a loan or
forbearance of money, and, reserving a greater rate of interest
than that allowed by law, is usurious; if, on the other hand,
the testimony of C. C. Farley is to prevail, the interest repre-
sents a part of the purchase price of the property sold without
which the sale could not have been effected; and again,
quoting the language of Judge Bouldin in *Graeme* v. *Adams*,
*supra :* "It is confounding subjects and terms wholly dis-
similar and distinct, to treat such contracts as usurious, as
coming within the definition either of a loan of money or other
thing, or the forbearance of a debt."

The Circuit Court held that there was no usury in the
transaction, and under the law as stated in *Graeme* v. *Adams*,
and the rule of evidence applicable to usurious transactions as
universally accepted, we cannot say that the Circuit Court
erred in its conclusion.

It is contended, however, by appellant that, even though the

transaction be not usurious, where a bond is given for the payment of a sum of money at a future day, reserving a rate of interest permitted by contract but greater than that established by law, only the legal rate can be recovered after the debt becomes due, unless the continuance of the greater rate be expressly provided for in the contract itself. This is the law in many jurisdictions and is sustained by courts of the highest authority. In this State, however, it has been settled otherwise, and the rate of interest reserved in the contract continues as an incident of the debt due in the absence of any stipulation to the contrary. *Cecil* v. *Hicks*, 29 Gratt. 1.

There was an effort to distinguish that case from the one under consideration upon the ground that in *Cecil* v. *Hicks* the interest reserved was lawful, but so is the rate reserved in the case before us if it be for the purchase price of land sold. The one lawful because expressly permitted by statute; the other lawful because not within the terms of the statute which declares what transactions shall be deemed usurious.

The petitioner Evans, the accommodation endorser, complains of the decree of the Circuit Court because it dismissed his bill as to the Farmville Mills.

Upon that branch of the case it appears that the unpaid notes representing a part of the deferred payments for the Farmville Mills property were held by the Planters Bank by virtue of an assignment from Scott and Davis before the institution of this suit. The deed to the Farmville Mills was executed August 13, 1889. The deed from Scott and Davis to Anna D. Scott bears date 24th of August, 1889. No recital or covenant contained in it could have been notice actual or constructive to the Farmville Mills when its title was acquired. There is no evidence whatever that either the Planters Bank, the holder, or the Farmville Mills, the maker of the notes, had any knowledge or notice of the claim now asserted by the petitioner to have the proceeds of those notes appropriated in satisfaction of liens upon "lot No. 90." Had the deed from

Scott and Davis to Mrs. Scott been in existence at the time when the rights of the Farmville Mills and the Planters Bank accrued, and had its contents been brought home to them, it does not operate as an assignment of, or a lien upon, the proceeds of sale of the Farmville Mills, but only as a covenant on their part to protect the title of their grantee, a covenant which, when broken, bound them personally to make good any injury sustained, not only out of the proceeds of the Farmville Mills but to the extent of all the property owned by them, and subject to their debts.

Upon the whole case we are of opinion that there is no error in the decree complained of, and it is affirmed.

*Affirmed.*