BOSWELL et al. v. BIG VEIN POCAHONTAS COAL CO. et al.

(District Court, W. D. Virginia, at Lynchburg.   November 3, 1914.)

1. **INTEREST (§ 28*)—RATE—WHAT LAW GOVERNS—CONSTRUCTION OF CONTRACT.**

   Where a promissory note was given and made payable in the same state, the question of the rate of interest it bears is to be determined by the local law.

   [Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 56–59; Dec. Dig. § 28.*]

2. **INTEREST (§ 37*)—STIPULATIONS AS TO RATE—CONSTRUCTION.**

   Under the law of Virginia as settled by decision, where a note merely provides for interest at a valid stated rate, the debt bears interest at that rate until payment, regardless of the rate established by statute.

   [Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 77, 78; Dec. Dig. § 37.*]

3. **INTEREST (§ 38*)—ALLOWANCE ON JUDGMENT—CONSTRUCTION OF STATUTE.**

   Code Va. 1904, § 3391, which provides that "in any suit in equity, or in any action founded on contract, where no jury is impaneled, judgment or decree may be rendered for interest on the principal sum recovered until such judgment be paid, and where there is a jury which allows interest the judgment shall in like manner be for such interest until payment," does not vest the court with any discretion as to the rate of interest or time to which it runs, but under the settled law of the state, if there is a lawful contract rate, it continues after judgment or decree, and if not the statutory rate governs, and in either case interest continues until payment of the debt.

   [Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 79–82; Dec. Dig. § 38.*]

4. **STATUTES (§ 227*)—CONSTRUCTION OF WORDS—"MAY" IN GRANT OF POWER.**

   Permissive words in respect to courts or officers are imperative in cases where the public or individuals have a right that the power so conferred be exercised, and in such cases the word "may," used in the statute, will be construed to mean "shall" or "must."

   [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 308, 309; Dec. Dig. § 227.*

   For other definitions, see Words and Phrases, First and Second Series, May.]

In Equity. Suit by Thomas T. Boswell and others against the Big Vein Pocahontas Coal Company and others. On settlement of decree of sale.

Keech, Wright & Lord, of Baltimore, Md., and Geo. W. St. Clair, of Tazewell, Va., for complainants.

Jackson & Henson, of Roanoke, Va., and R. B. Tippett, of Baltimore, Md., for Mrs. Browning.

McDOWELL, District Judge.   By a deed dated March 12, 1909, Mrs. O. H. Browning, inter alia, leased to one Boswell a tract of coal-bearing land lying near Pocahontas, in this district.   In addition to certain royalties, the consideration for the lease was a so-called "bonus" of $200,000.   A part thereof was to be paid by April 1, 1909, and the balance was payable in three annual installments, due, respectively, in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

one, two, and three years. These installments were evidenced by notes, made at Pocahontas and payable there. The first of the notes, so far as is now material, reads as follows:

"$50,000.00.                                                  Pocahontas, Va. April 1, 1909.

"One year after date I promise to pay to the order of Ollie H. Browning fifty thousand dollars, without offset, with interest from date at the rate of five per cent. per annum. For value received, negotiable and payable at First National Bank, Pocahontas, Va.                    Thos. T. Boswell."

The two remaining notes are identical with the foregoing, except as to the time for payment. In the lease the provision in respect to the notes reads:

"Payable on the respective days aforesaid, with interest at the rate of·5 per cent. per annum from date *until paid*."

The notes were not paid, and a question has been made as to whether the sums thus in default bear interest at 5 per cent. until the maturity of the notes, until judgment, or until payment.

[1] The legal rate of interest for the loan or forbearance of money in this state is 6 per cent. per annum. Code 1904, § 2817. The questions here are to be decided in accordance with the local law. Ohio v. Frank, 103 U. S. 697, 698, 26 L. Ed. 531; Holden v. Trust Co., 100 U. S. 72, 74, 25 L. Ed. 567; Mass. Ass'n v. Miles, 137 U. S. 689, 691, 11 Sup. Ct. 234, 34 L. Ed. 834; New Orleans v. Warner, 175 U. S. 120, 147, 20 Sup. Ct. 44, 44 L. Ed. 96; Cromwell v. County, 96 U. S. 51, 61, 24 L. Ed. 681; Sherwood v. Moore (C. C.) 35 Fed. 109; Bolles v. Town (C. C.) 45 Fed. 168, 169; Bond v. John V. Farwell Co., 172 Fed. 58, 65, 96 C. C. A. 546.

[2] Under the rule laid down in Cecil v. Hicks, 29 Grat. (70 Va.) 1, 6, 26 Am. Rep. 391, and in Evans v. Rice, 96 Va. 50, 56, 30 S. E. 463, the notes, if read without reference to the lease, are to be construed as meaning interest at 5 per cent. until payment. In the former case the bond read:

"Six months after date, we promise and bind ourselves * * * to pay to John F. Hicks, or order, the sum of $7,000, with interest at the rate of 12 per centum per annum from date."

The opinion reads:

"It was as competent for these parties to agree upon 12 as upon 6 per centum per annum, as the rate of interest upon the debt until its payment; and we are of opinion that they did agree upon 12 and not upon 6 per centum per annum as the rate in this case. We think their contract ought to be construed precisely as if the words 'till paid' had been inserted therein after the words 'from date,' and that such was their obvious meaning."

In Evans v. Rice, supra, the bond read: "With interest at the rate of 8 per cent. per annum, payable annually." It was held that this rate prevailed until payment.

But, even if there were room for doubt as to the proper construction of the notes in the case at bar, the wording of the lease (the formal and fully expressed contract of the parties) removes, as it seems to me, all possibility of even a plausible contention that the contract is otherwise than for 5 per cent. per annum until payment.

It is further contended in behalf of Mrs. Browning that a decree rendered in this cause in January, 1912, directed the payment to her of the "bonus," and that, at least since the entry of that decree, the sum due her should bear interest at 6 per cent. That decree cannot be properly so construed. The clause relied upon reads:

"* * * It is further decreed that Ollie H. Browning * * * shall have and be entitled to a first and prior lien upon the lands * * * for the true and lawful balance remaining unpaid upon the bonus payment of $200,000 in said lease mentioned, * * * and all interest due and to become due thereon, the amount of such principal and interest, respectively, *to be ascertained* and reported by the master appointed in these proceedings."

Notwithstanding the facts above set out, it is urgently contended that the debt should bear interest at 6 per cent., at least from the date of the judgment rendered in this cause on October 27, 1914. My own opinion is that the unquestionable contract right of the debtor to have the interest run at 5 per cent. until payment makes argument unnecessary. In Roberts v. Cocke, 28 Grat. (69 Va.) 207, 218, it is said:

"Wherever there is a contract, express or implied, for the payment of legal interest, the obligation of the contract extends as well to the payment of the interest as it does to the payment of the principal sum, and neither the courts nor the juries ever had the arbitrary power to dispense with the performance of such contract, either in whole or in part."

In Strayer v. Long, 83 Va. 715, 722, 3 S. E. 372, 376, it is said:

"The next assignment of error is as to the allowance of 10 per centum interest on the Long debt. The contract is for 10 per centum per annum, which was a legal rate of interest in this state at that time, if expressly contracted for. But it is argued that in this case the court should reduce the rate of interest to 6 per centum from the time when the lands of the defendant were taken out of his control and put in the hands of a receiver of the court, thus depriving him of the means of paying the debt. * * * But he is bound by his contract as he made it, the same not appearing to be unlawful, nor otherwise invalid. The courts cannot make another contract for the parties."

I think of no sound reason for ruling that, while a creditor is entitled to have a validly agreed upon rate, higher than the regular rate, prevail until payment, the debtor is not entitled to have a validly agreed upon rate, less than the regular rate, prevail to the time agreed upon. In either event we have a clear contract right, and I know of no principle of law which authorizes the courts to make a new contract for the parties. In 6 Va. Law Reg. 658, relied upon by counsel for Mrs. Browning, it is said:

"If a contract is made for interest at the lower rate 'until paid,' of course such express agreement would prevail."

And it is at least doubtful if the editorial in 5 Va. Law. Reg. 113, was intended to present a different contention.

It should be added that there are at least two Virginia decisions which indicate that the foregoing has been the Virginia rule since a very early date. In Brooke v. Roane, 1 Call (5 Va.) 205 (1798), at a time when the statutory rate of interest in this state was 5 per cent., a judgment bearing interest at such rate was rendered against Brooke. When levy of execution thereon was made, the statutory rate of interest having been in the meantime increased to 6 per cent., Brooke executed

a forthcoming bond. This bond was forfeited, and the judgment rendered on the forthcoming bond was for the debt, with interest at 6 per cent. *until paid*. The appellate court (page 206) reversed this judgment and directed the entry of judgment for the debt, "with interest after the rate of 5 per cent. per annum, from the 18th day of July, 1797, *till payment,* and the costs." In Whitehorn v. Hines, 1 Munf. (15 Va.) 557, 589, Judge Fleming said:

"It seems to me, therefore, that an account ought to be taken, and that the legatees of John Glanton pay their ratable proportion of the money due, for hire of negroes, and on the sales of the land, with interest at 5 per centum per annum, on the latter from the death of William Howell *to the time of payment.*"

This case was also apparently decided on common-law principles. The bill was filed in July, 1800, to set aside a conveyance made in 1783.

[3] However, for the sake of complete consideration, I shall discuss as briefly as may be section 3391, Code 1904, as it may be contended that this statute gives the court a discretion to make the debt bear 6 per cent., at least from judgment. From such study as I have made of this statute, and of the Virginia decisions rendered since the enactment of apparently its earliest prototype, I think that the statute gives no discretion, in cases where interest is allowed, as to the *rate* or the *time to which* interest runs, and that, at least in a case such as the one before us, there is no discretion whatever given by the statute. I am quite satisfied that this statute should be as implicitly followed by this court in a chancery case as in a civil common-law cause, if it applies at all. Holden v. Trust Co., supra, 100 U. S. 72, 74, 25 L. Ed. 567, in which it is said that "the question is always one of local law," was an equity cause. So, also, was New Orleans v. Warner, supra, 175 U. S. 120, 147, 20 Sup. Ct. 44, 55 (44 L. Ed. 96) in which it is said: " * * * If the local law be different, this court will follow it." See, also, Coltrane v. Blake (C. C. A. 4th Cir.) 113 Fed. 785, 791, 51 C. C. A. 457, an equity case, in which the local law is held to govern, and Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474.

The statute in question reads as follows:

"In any suit in equity, or in an action founded on contract, where no jury is impaneled, judgment or decree may be rendered for interest on the principal sum recovered, until such judgment be paid; and where there is a jury, which allows interest, the judgment shall, in like manner, be for such interest until payment." Section 3391, Code 1904.

See, also, Code 1887, § 3391; Code 1873, p. 1121, § 18; Code 1860, p. 733; Code 1849, p. 673; 1 Rev. Code 1819, pp. 208, 508. The statute in its original form (Code 1808, p. 29; 3 Shepherd's Statutes at Large, pp. 98, 99, §§ 1, 5) was enacted January 20, 1804, and went into effect May 1, 1804.

One reason for the construction I give to this statute is found in the provision as to the time to which interest runs when a jury allows interest by its verdict. "The judgment shall, *in like manner,* be for such interest until payment." It seems to me that the words "in like

manner" would not appear in this part of the statute, if the former clause had been intended to give the court a discretion as to the time *to which* interest should run.

Another and stronger reason for such construction is found in the Virginia authorities. In Snickers v. Dorsey, 2 Munf. (16 Va.) 505, 510, the second headnote reads:

"In general, since the 1st of May, 1804, when interest is allowed in equity, it should not stop at the time when the balance of account is struck, nor at the date of the decree, but should run *to the payment of such balance*."

The decree of the appellate court reads:

"And it is ordered that the cause be remanded to the said court of chancery, to be proceeded in upon the principles and for the purpose aforesaid, and also for the purpose of allowing the appellee interest on the principal sum, which may be found due to him, *to the time of payment*."

In Dunbar v. Woodcock, 10 Leigh (37 Va.) 628, 654, the trial court was held in error to have allowed interest from a remote date, the decree below was reversed, "with instructions to allow interest on the balance which may be found due *from the date of the final decree*" —necessarily *until payment*. In Cecil v. Hicks, supra, 29 Grat. (70 Va.) 1, 3, 8, 26 Am. Rep. 391, the court said:

"The only question presented by the case to this court for decision is: Did the circuit court err in rendering judgment for interest on the said principal sum at the rate of 12 per cent. per annum from the date of said bill till payment, instead of interest thereon at that rate from said date till the maturity of said bill, and at the rate of 6 per cent. per annum from such maturity until payment? * * * Upon the whole, we are of opinion that there is no error in the judgment, and that it ought to be affirmed."

In Evans v. Rice, 96 Va. 50, 56, 30 S. E. 463, 465, the third headnote, by Professor M. P. Burks, reads:

"Agreement to Pay Higher than Legal Rate of Interest—How Long Rate Continues.—Where a greater than the legal rate of interest is agreed on by the parties, on a debt to mature in the future, the greater rate continues, in the absence of an agreement to the contrary, after the maturity of the debt, and until it is paid."

It was contended by appellant (see brief filed at Wytheville and now before me):

"But even though your honors should differ from the views above presented, and decide that the 8 per cent. interest which the $3,000 bond bore was a part and ingredient of the purchase price of the property, then we submit that said bond could only bear 8 per cent. interest *up to the time of its maturity*, and that from and after its maturity 8 per cent. would become usurious. * * *"

The opinion of the court reads:

"It is contended, however, by appellant, that, even though the transaction be not usurious, where a bond is given for the payment of a sum of money at a future day, reserving a rate of interest permitted by contract, but greater than that established by law, only the legal rate can be recovered after the debt becomes due, unless the continuance of the greater rate be expressly provided for in the contract itself. This is the law in many jurisdictions, and is sustained by courts of the highest authority. In this state, however, it has been settled otherwise, and the rate of interest reserved in the contract

continues as an incident of the debt due, in the absence of any stipulation to the contrary. Cecil v. Hicks, 29 Grat. [70 Va.] 1 [26 Am. Rep. 391]."

In Shipman v. Bailey, 20 W. Va. 140, 145, 146, it is said:

"In a number of cases in Virginia and elsewhere the courts have decided, evidently upon this view of the effect of the judgment upon the original contract, that where a debt is contracted for [at] a less or greater rate of interest than the laws of the lex fori permit at the time of its enforcement, if authorized by the laws when or where it was made, the courts of the lex fori will not hesitate to give judgment upon such debt, to bear interest at the rate specified in the contract, not only to the date of the judgment, but afterwards until the debt is paid."

See, also, Bent v. Patten, 1 Rand. (22 Va.) 25; Pickens v. McCoy, 24 W. Va. 344, 353; Barbour v. Tompkins, 31 W. Va. 410, 7 S. E. 1. In 3 Minor's Inst. (2d Ed.) p. 386, it is said:

" * * * A promise 'to pay $1,000 six months after date, with 8 per cent. (or 12 per cent., or 3 per cent.) interest,' is prima facie interpreted as a promise to pay $1,000 six months after date, with 8 per cent. (or 12 per cent., or 3 per cent.) interest, not only *until maturity*, but afterwards until paid."

In 4 Minor's Inst. (3d Ed.) p. 967, it is said:

"In an action on a contract, where no jury is impaneled, judgment is to be entered for interest on the principal sum recovered, from the time the principal was payable, or expressly bore interest, until payment."

In 1 Robinson's (old) Pr. p. 361, citing Code 1819, it is said:

"In all actions founded on contracts, where judgment shall be rendered in court, if interest be allowed, such interest shall be upon the principal sum due, and shall continue until such principal sum be paid. And in all actions founded on contracts and tried before a jury, the jury shall ascertain the principal sum due, and fix the period at which interest shall commence, if interest be allowed by them; and judgment shall be rendered accordingly, carrying on the interest till the judgment shall be satisfied."

I find nothing in the present statute which gives the court any discretion as to the *rate* of interest. The statute seemingly contemplates that, where interest is properly allowed, it shall be at either the statutory rate or at the (legally) agreed rate. An entire absence of discretion as to the rate of interest tends to support the conclusion that no discretion was intended as to the time *to* which interest, if allowable, should run at the legally agreed rate.

[4] Finally, it must be remembered, in construing this statute, that we are dealing with a case in which there is, by an express contract, a right on the part of the debtor that the interest shall be at the rate of 5 per cent. *until payment*. Under such circumstances, the word "may" in the statute is equivalent to "shall," quoad the rate of interest and the time to which interest shall run. In Black's Interpret. of Laws, pp. 338, 342, it is said:

"The word 'may' will be construed to mean 'shall' or 'must,' when the public interests and rights are concerned, and when the public or third persons have a claim de jure that the power shall be exercised. * * * And, in general, where the statute enacts that a public officer 'may' act in a certain way, which is for the benefit of third persons, he must act in that way."

In Sutherland's Stat. Const. p. 597, it is said:

"Permissive words in respect to courts or officers are imperative in those cases in which the public or individuals have a right that the power so conferred be exercised."

In Supervisors v. U. S., 4 Wall. 435, 445, 446, 447, 18 L. Ed. 419, the statute involved read:

"The board of supervisors * * * may, if deemed advisable, levy a special tax. * * *"

In the opinion it is said:

"The conclusion to be deduced from the authorities is that where power is given to public officers, in the language of the act before us, or in equivalent language, whenever the public interest or individual rights call for its exercise, the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his."

See, also, Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560.

It follows that, even if there be in some cases a discretion given by the statute to the court as to the time to which and the rate at which interest shall run, there is no discretion whatever in a case such as we have here. The foregoing are the reasons which lead me, in the decree of sale of October 27, 1914, to order that Mrs. Browning recover interest on the bonus payments at the rate of 5 per cent. until payment.