## UNITED STATES ex rel. HARRIMAN NAT. BANK v. CAPLINGER, County Judge.*

Circuit Court of Appeals, Eighth Circuit. April 12, 1927.

No. 7502.

1. Mandamus ⬗103—Under Constitution and statute of Arkansas, creditor may compel county by mandamus to issue bonds to fund indebtedness; "may issue" (Const. Ark. Amend. 11; Acts, Ark. 1925, p. 608).

Const. Ark. Amend. 11, adopted October 7, 1924 (see Act 1925, p. 1086), and Act Ark. March 23, 1925 (Acts 1925, p. 608), prescribing procedure thereunder, provide that to pay indebtedness outstanding at the time of adoption of the amendment counties "may issue" interest-bearing bonds and levy taxes for their payment. Held that, in view of the declared purpose of the amendment to place the fiscal affairs of counties, cities, and incorporated towns on a sound financial basis, the power given is not discretionary, but mandatory, and a creditor may compel its exercise by mandamus.

*Rehearing denied June 30, 1927.

2. Statutes ⬗227—Statute granting power to public officers, though permissive in form, may be mandatory.

Where by statute power is given to public officers, and the public interest or individual right calls for its exercise, the language used, though permissive in form, in fact is peremptory.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action for mandamus by the United States, on the relation of the Harriman National Bank, against A. B. Caplinger, as County Judge of Poinsett County, Ark. Judgment for defendant, and plaintiff brings error. Reversed.

S. L. White and Abner McGehee, both of Little Rock, Ark., for plaintiff in error.

M. P. Watkins, of Harrisburg, Ark., and Charles D. Frierson, of Jonesboro, Ark., for defendant in error.

Reed, Dougherty, Hoyt & Washburn, of New York City (Robert R. Reed, of New York City, of counsel), amici curiæ.

Before LEWIS and KENYON, Circuit Judges.

LEWIS, Circuit Judge. This is a proceeding in mandamus. The petition for the writ alleges that relator, Harriman National Bank of New York, recovered a judgment for $25,000 against Poinsett County, Arkansas, on warrants issued by the County prior to the adoption of Amendment No. 11 to the Arkansas Constitution; that Caplinger is the Judge of the county court of that County and that court in June, 1925, determined of record and published the amount of the county indebtedness as of the time of the adoption of said amendment; that in April, 1926, relator petitioned said county court and Caplinger as judge thereof to issue interest-bearing bonds of said county in an amount sufficient to pay said judgment and either sell said bonds for that purpose or deliver them to relator in satisfaction of said judgment; that the county has no funds with which to pay said judgment and will have none unless said amendment and the statute passed pursuant thereto are complied with by the county; that on the issuance of said bonds said county is authorized to make a special annual tax levy, not exceeding three mills, on taxable property within the county for the purpose of raising a fund applicable to the payment of its bonded indebtedness only, as in said amendment and statute provided; that otherwise the maximum tax levy

is five mills for county purposes which is all needed for current county expenditures and will continue to be so needed and applied and no part of relator's judgment can be paid therefrom; that unless said bonds are issued and said special levy is made for their payment relator's judgment will remain wholly unpaid; that said county court and the judge thereof have wholly failed to comply with said amendment and statute and with relator's petition therefor and the writ was prayed for commanding the county court and the judge thereof to enter an order for the issuance of bonds or a certificate of indebtedness to relator in payment of its judgment bearing the legal rate of interest or that said bonds be sold and the proceeds applied in payment of the judgment, in compliance with said amendment and statute. They are copied in full in the margin below.[1]

[1] A demurrer to the petition was sustained on the ground that Amendment No. 11 and the statute did not make it mandatory on the county court and the judge thereof to refund the county's indebtedness, but left it optional—that it was a matter wholly within the discretion of the county judge. We think the point not well taken, and that the court erred in sustaining the demurrer. The record does not disclose the reason for the court's action in this case; but it seems apparent, in fact it is agreed, that its action in the prior case of United States ex rel. v. Paschall, County Judge of Lincoln County, a like case, was followed. Two reasons were given for denying the writ in that case (see United States ex rel. v. Paschall [D. C.] 9 F.[2d] 109), the basis for one of which does not exist in this case—that is, the total amount of the indebtedness of Lincoln County outstanding at the time of the adoption of

---

[1] Amendment No. 11, Constitution of Arkansas adopted at general election October 7, 1924, going into effect sixty days thereafter. Acts 1925, p. 1086:

Section 1. That section 4 of article 12 of the Constitution of the state of Arkansas be amended by adding thereto the following:

"The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk, or any other county officer, sign or issue any script, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year; nor shall any city council, board of aldermen, board of public affairs, or commissioners, of any city of the first or second class or any incorporated town enter into any contract or make any allowance for any purpose whatsoever or authorize the issuance of any contract or warrants, scrip or other evidences of indebtedness in excess of the revenue for such city or town for the current fiscal year; nor shall any mayor, city clerk, or recorder, or any other officer or officers, however designated of any city of the first or second class or incorporated town sign or issue any scrip, warrant or other certificate of indebtedness in excess of the revenue from all sources for the current fiscal year.

"Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties, cities and incorporated towns may issue interest-bearing certificates of indebtedness or bonds with interest coupons for the payment of which a county or city tax in addition to that now authorized, not exceeding three mills, may be levied for the time as provided by law until such indebtedness is paid.

"Where the annual report of any city or county in the state of Arkansas shows that scrip, warrants or other certificates of indebt-

edness had been issued in excess of the total revenue for that year, the officer or officers of the county or city or incorporated town who authorized, signed or issued such scrip, warrants or other certificates of indebtedness shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined in any sum not less than five hundred dollars nor more than ten thousand dollars, and shall be removed from office."

Section 2. The provisions of the Constitution of the state of Arkansas in conflict with this amendment are hereby repealed in so far as they are in conflict herewith, and this amendment shall take effect and be in operation sixty (60) days after its approval and adoption by the people of the state of Arkansas.

Act No. 210, entitled "An act to facilitate the funding of the debts of counties, cities and incorporated towns." General Acts of Arkansas 1925, p. 608:

Section 1. The county court of any county or the city or town council of any city or incorporated town may issue bonds for the purpose of funding the indebtedness of such county, city or town outstanding at the time of the adoption of Amendment No. 11 to the Constitution of the state of Arkansas, appearing on pages 797 to 799, inclusive, of the General Acts of the General Assembly of the state of Arkansas of the year 1923.

Before the issue of any county or city bonds under this act, the county court shall by order entered upon its records, declare the total amount of such indebtedness or the city or town council shall by ordinance, declare the total amount of such indebtedness. Such order of the county court shall be published immediately for one insertion in some newspaper published in the county, and such ordinances of the city or town council shall be immediately published in some newspaper issued in such city or town, if there be one, and if not, in some newspaper published in the county; and any property owner who is dissatisfied may, by suit in the chancery court of the county brought within thirty days after the

Amendment No. 11 had not been declared of record by the county court, as had been done in this case; so, as to the soundness of that reason, we need not and do not express an opinion. The other reason there assigned for denying the writ, was the court's conclusion that a refunding of the county's indebtedness was not made mandatory by the amendment or the statute, and that each county was left free to exercise its discretion whether it would or would not avail itself of the extended power and privilege. Both amendment and statute say that counties "may issue" interest bearing bonds for the purpose of pay-

ing or funding their indebtedness, and these terms were accepted in their literal sense, as merely permissive. As to the amendment, there would be no occasion to hold otherwise if we regard only those words; for it was a grant of power that did not previously exist. The conditions under which the power should be exercised might well be left to the legislature. But the first section of the amendment is strongly persuasive that the people in adopting it intended that the power should be exercised by counties heavily in debt, as is Poinsett County. Its purpose was to put such counties on a sound financial basis, to es-

---

publication of such order or ordinance have a review of the correctness of the finding made in such order or ordinance; but if no such suit is brought within thirty days, such finding shall be conclusive of the total amount of such indebtedness, and not open to further attack, and if said suit is brought the adjudication shall settle the question and appeal therefrom must be taken and perfected within thirty days. If any officer of such county, city or town shall wilfully make any false statement as to the amount of its indebtedness, he shall forfeit his office and be ineligible to hold any other office of profit or trust in this state.

Section 2. Such bonds shall be negotiable coupon bonds payable serially through a period of not exceeding forty years, and bearing a rate of interest not exceeding six per cent. per annum, the schedule of maturities to be so arranged that the total amount of principal and interest each year shall be substantially the same; but none of such bonds shall mature before September 1, 1926.

Section 3. Such bonds shall not be sold for less than par, except that bonds may be sold at six per cent. with the privilege of conversion into bonds bearing lower rate on such terms that the county, city or town shall receive thereon and pay therefor substantially the same amount of money as on six per cent. bonds at par, and the proceeds thereof shall be used only in the payment of indebtedness of such county, city or town existing at the time of the adoption of said Eleventh Amendment to the Constitution. If any officer of any county, city or town shall use any part of the proceeds of such bonds for any other purpose he shall be deemed guilty of a felony and shall be imprisoned in the penitentiary for not less than one year.

Section 4. Before or after the issue of said bonds the quorum court of such county or the city or town council of such city or town shall levy a tax, which, on the existing assessed value of the property of such county, city or town, will suffice to retire said bonds as they mature, with five per cent. added for unforeseen contingencies; provided that said tax shall not exceed three mills on the dollar of such assessed value. If said tax proves insufficient to meet the maturities of the bonds with interest, it shall be the duty of the quorum court of such county or the city or town council to increase such levy of taxes, but not beyond three mills upon the dollar of the then assessed valuation; and if by reason of the increase in the assessed

value of the property of such county, city or town a lower rate of tax will prove sufficient to meet the bonds and coupons as they mature, the amount of the tax may be lowered accordingly; but no tax shall be levied which will produce less than the sum required to meet the maturities of the bonds with five per cent. added for unforeseen contingencies, nor shall any tax in excess of three mills on the assessed value existing at the time of such levy ever be levied in any year. The money derived from such taxes shall be preserved as a separate fund for the redemption of such bonds, and any officer of such county, city or town, or any other person who uses any of such money for any other purpose shall be deemed guilty of a felony and imprisoned for a period not less than one year.

Section 5. If any provision of this act is held to be unconstitutional, it shall not affect the validity of the remainder, but the remainder shall stand.

Section 6. If any county judge or any officer in any city or town shall include in the debt to be funded any debts that were not due in good faith at the time of the adoption of said Amendment No. 11, he shall be deemed guilty of a misdemeanor and fined in a sum not less than $500, and may be imprisoned in the county jail at the pleasure of the court.

Section 7. The fiscal year of each county, city and town in this state shall begin with the first day of January and end at midnight on the 31st day of December of each year.

Section 8. It is hereby ascertained and declared that by reason of the heavy indebtedness hanging over many cities and towns they are unable to procure or maintain proper facilities for the extinction of fires, proper police protection, or proper safeguards for the public health, and that by reason of the indebtedness hanging over many counties they are unable to maintain the public buildings, the roads and bridges in a safe condition, are unable to maintain such deputy sheriffs and deputy constables as are necessary to preserve the public peace and to protect the citizens against criminals and are unable to maintain the institutions and enforce the regulations for the preservation of the public health, and for these reasons it is hereby declared that an emergency exists, and that this act is immediately necessary for the preservation of the public peace, health and safety, and the same shall take effect and be in force upon its passage.

tablish their credit, provide ways and means to pay their indebtedness and to prevent further contracting debts for which no revenue could be provided. Under the Constitution taxpayers in the county could pay their county taxes with discredited warrants. There is no priority in payment of warrants when it came to tendering them for county taxes, hence, as alleged, there was no way in which holders of warrants who were non-taxpayers in Poinsett County could ever realize anything. It was the undoubted purpose of the amendment to have such counties as this pay their indebtedness in the method provided and to put a stop to further repudiation. So much for the amendment, but let us take it as a mere grant of power, reasonable conditions for the exercise of which should be left to the legislative branch, notwithstanding the Supreme Court of the State has held the amendment self-executing. Cumnock v. City of Little Rock, 168 Ark. 777, 271 S. W. 466; Lucas v. Reynolds, 168 Ark. 1084, 272 S. W. 653; Matheny v. Independence County, 169 Ark. 925, 277 S. W. 22. Dillon on Municipal Corporations (5th Ed.) § 246, says, it is always a question of legislative intention, and, therefore, of construction to determine whether a duty imposed by law is imperative or discretionary. United States ex rel. Siegel v. Thoman, 156 U. S. 353, 359, 15 S. Ct. 378, 39 L. Ed. 450. The statute prescribes the procedure to be taken by the county court, that the bonds to be issued shall be negotiable coupon bonds payable serially through a period of not exceeding forty years and shall bear interest not exceeding six per cent. per annum, and that a tax not exceeding three mills on the dollar shall be levied to meet the maturities of the bonds with interest. The revenue so to be raised shall be used only in payment of said indebtedness, it must be preserved as a separate fund for that purpose and its diversion is made a felony. These and other provisions of the statute fully supplied the county courts with the means of executing the power conferred by the amendment. Under the amendment and statute, if carried out, benefits would accrue to the county's creditors; and plainly it was so intended. Not only so, but the legislature found that it would be beneficial to the public to refund the indebtedness. The title of the act is: "An act to facilitate the funding of the debts of counties, cities and incorporated towns," and its last section recites that many counties, cities and towns are so heavily indebted that they cannot obtain the necessary funds to carry on their ordinary functions; police and fire protection,

safeguard the public health, maintain public buildings, roads and bridges and provide for police officers in maintainance of the public peace. This, it was found, created an emergency, and because thereof the Act was put into immediate effect on its passage. A municipality, like an individual who has no intention of paying his debts, becomes reckless in issuing its obligations and then finds it has no credit. That is what the Legislature found in this Act, and it directed the only way out, which when followed will be beneficial not only to the public, but to the county's creditors also. Reverting to the section, supra, in Dillon, it is said: "The words that a corporation or officer *may act* in a certain way, or that it *shall be lawful* to act in a certain way, may be imperative. On this subject some of the cases declare the doctrine that what public corporations or officers are empowered to do for others, and that which is beneficial to them or to the public to have done, the law holds they ought to do, especially if the law specifically or adequately supplies them with the means of executing the power. The power in such case is conferred for the benefit of others or of the public; and the intent of the Legislature, which is the test in such cases, ordinarily seems, under such circumstances to be to impose a positive and absolute duty. But under other circumstances, where the act to be done does not affect third persons, and is not clearly beneficial to them or the public, and the means for its performance are not supplied, the words, *may* do an act, or it is *lawful* to do it, do not mean *must*, but rather indicate an intent in the Legislature to confer a discretionary power."

[2] In Rock Island County v. United States ex rel., 4 Wall. 435, 18 L. Ed. 419, an Illinois statute was up for consideration. It provided that "the board of supervisors under township organization, in such counties as may be owing debts which their current revenue, under existing laws, is not sufficient to pay, *may, if deemed advisable*, levy a special tax," etc. There the relator, a judgment creditor, sued out the writ of mandamus to compel the board to make the levy as the means of paying his judgment. The board appealed, and contended that the words, *may, if deemed advisable*, imposed on it only a discretionary duty which they were to discharge, or not, as the judgment of the board might dictate, and that judgment could not be coerced and enforced by the writ. But the Supreme Court after reviewing the authorities answered the contention thus: "The conclusion to be deduced from the author-

ities is, that where power is given to public officers, in the language of the Act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depository to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that the intent of the Legislature, which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.'" Unless the power is exercised in this case the county will go on with the maximum levy of five mills all of which will be applied to payment of current county expenditures, and relator will receive nothing on its judgment. It is entitled to have that judgment paid, it is the duty of the county to pay it, and the amendment and the statute have provided a method for its payment. A remedy is given by which that end may be accomplished, and relator is entitled to have it enforced. In City of Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560, judgment was recovered by Amy on bonds issued by the City, which remaining unpaid, he applied for and obtained writ of mandamus to compel a levy of not exceeding one per cent. on the dollar of the assessed value of taxable property in the city. The statute relied on provided that the city council "may, if the said city council believe that the public good and the best interests of the city require," make the one per cent. levy and collect the tax to be applied in payment of the City's funded debt. Of this statute the Supreme Court said: "They [the city authorities] have no other means of payment, in possession or prospect. Under such circumstances, the discretion thus given cannot, consistently with the rules of law, be resolved in the negative.

The rights of the creditor and the ends of justice demand that it should be exercised in favor of affirmative action, and the law requires it. In such cases the power is in the nature of a trust for his benefit, and it was the plain duty of the court below to give him the remedy for which he asked, by awarding a peremptory writ to compel the imposition of the tax, as was done."

This court in City of Little Rock v. United States ex rel. Howard (C. C. A.) 103 F. 418, had presented to it for determination the right of a judgment creditor to demand and to have issued to him City warrants in payment of his judgment, there being no other way in which he could collect or realize any thing on his judgment. The statute under which the warrants could be issued for that purpose was permissive, not peremptory, in its terms; and we said: "As this was the only way in which the plaintiffs in error could provide for the payment of this judgment, and as they had ample power to provide for it in this way, it was their plain duty to do so, and the court below properly commanded them to discharge that duty. Where a municipality and its officers have the power to pay a judgment against a city by the issue to the owner of the judgment of city warrants which are receivable for city taxes, and have no other way to pay it, it is their duty to issue the warrants, and the writ of mandamus will be granted to compel them to discharge that duty." See also Mason v. Fearson, 9 How. 248, 259, 13 L. Ed. 125; Chase v. United States (C. C. A.) 261 F. 833; Boswell v. Coal Co. (D. C.) 217 F. 822, 827; Ralston v. Crittenden (C. C.) 13 F. 508, 512; 36 Cyc. p. 1160.

We are not impressed with the contention that the statute imposes discretion in the county judge in the several steps to be taken in the procedure. They are made fairly definite in the Act, when the purpose and character of the whole subject is brought under consideration. Business and financial considerations will readily dictate reasonable dates for bond maturities, and if sales at par cannot be made of the bonds on a basis of six per cent. or less they may be offered to creditors, which relator has signified its willingness to accept. The county judge took the first step and stopped, no reason is shown why he should not go on and compelled to do so, if necessary. The issue here is with the relator. Its rights will not be sacrificed on the claim, that defendant in error does not know what should be done as to other creditors. If it be necessary to consider them in adjusting relator's rights let him proceed to do so. The duty is imposed and it cannot be evaded by non-action on the assertion of counsel that it may seem difficult to plaintiff in error in proper performance. If the matter be taken up with a serious purpose to comply with the Act, we have no doubt the procedure will seem plain and simple.

The judgment dismissing relator's petition is reversed with directions to reinstate it, overrule the demurrer thereto and then proceed in accord with the views herein expressed.