## GOLTRA v. DAVIS, Secretary of War, et al.*

Circuit Court of Appeals, Eighth Circuit.
November 2, 1928.

No. 8109.

*Certiorari denied, 49 S. Ct. —, 73 L. Ed. —.

Joseph T. Davis, of St. Louis, Mo., for appellant.

Lon O. Hocker, of St. Louis, Mo., for appellees.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge. This case has already had considerable appellate history, as different phases thereof have been twice before the Supreme Court of the United States and once before in this court.

On the 28th day of May, 1919, the United States government represented by Major General William M. Black, Chief of Engineers, United States Army, directed by the Secretary of War to represent the United States, chartered and leased to the appellant herein for a term of five years, 19 barges, and three or four towboats, which were being constructed, and about to be constructed, by the United States government.

The lessee was to operate this fleet of towboats and barges under certain terms and conditions, and was given an option within the three-month period before the expiration of the lease, or any renewal thereof, to purchase the leased property.

Section 2(a) and section 8 of this lease are as follows:

Section 2. (a).—That the said lessee shall operate as a common carrier the said fleet of three or four towboats and nineteen barges upon the Mississippi river and its tributaries for the period of the lease and of any renewals thereof, transporting iron ore, coal, and other commodities at rates not in excess of the prevailing rail tariffs, and not less than the prevailing rail tariffs without the consent of the Secretary of War; but nothing herein shall be deemed to prevent the most profitable and most advantageous use of said vessels being made, provided the Secretary of War consents to such use other than as a common carrier.

Section 8.—The lessor reserves the right to inspect the plant, fleet, and work at any time to see that all the said terms and conditions of this lease are fulfilled, and that the crews and other employees are promptly paid, monthly or oftener; and noncompliance, in his judgment, with any of the terms or conditions will justify his terminating the lease and returning the plant and said barges and towboats to the lessor, and all moneys in the Treasury or in bank to the credit of the Secretary of War shall be deemed rentals earned by and due to the lessor for the use of said vessels.

On March 4, 1923, the Secretary of War caused to be served upon the plaintiff herein a notice providing, in substance, that acting under and by virtue of the provisions in said paragraph 8, said lease was declared to be violated and terminated. And on April 27, 1923, a similar notice signed by the Chief of Engineers was served upon this appellant. On March 25, 1923, the Secretary of War, acting through Colonel T. Q. Ashburn, Chief Inland and Coastwise Water Ways Service, forcibly took possession of the leased property, whereupon this appellant filed his bill of complaint asking for a temporary restraining order and that the defendants, appellees herein, be ordered to restore the possession of the property to him, and further that they be ordered to show cause why a temporary injunction should not issue.

Answers were filed on May 8, 1924, and on September 4, 1924, a hearing was had and evidence introduced on the application for the temporary injunction. An order was made by the District Court of the United States for the Eastern District of Missouri, granting the temporary injunction as prayed, and ordering the property restored to this appellant.

On appeal from the action of said court same was heard by the Circuit Court of Appeals and a decision entered which is found in 7 F.(2d) 838. And from this decision an appeal was had to the United States Supreme Court and decision rendered June 7, 1926, and reported in 271 U. S. 536, 46 S. Ct. 613, 70 L. Ed. 1074. In that case are found the following rules and decisions:

"Coming now to the merits, however, we think that the District Court erred in granting the temporary injunction, because, on

the facts disclosed, the lease was finally terminated by the decision of the Secretary of War and the Chief of Engineers, communicated· to Goltra under § 8 of the contract. * * * It appears from the evidence that during the season from July 15, 1922, when Goltra got the boats, they were not in use but were tied up except for the transportation of two comparatively small cargoes. The bill itself admits that Goltra did not fulfill his covenant to operate as a common carrier. He says he was prevented from doing so by the Secretary's refusal to give him the rates he wished. The contract expressly forbade rates exceeding the prevailing rail rates and forbade rates less than the rail rates except by consent of the Secretary.

"The stipulation that the lessor, the Chief of Engineers, could terminate the lease if in his judgment Goltra was not complying with the obligations of the contract, did not require for its exercise that the Chief of Engineers, or the Secretary, should hold a court and have a hearing to determine the question of compliance. Goltra was given a notice March 4th, of the termination. He answered March 8th, but he tendered no facts upon which either the Secretary or the Chief of Engineers could base any different conclusion from that already reached from the failure of Goltra to fulfill his obligations. Both the Secretary and the Chief of Engineers were fully advised of what Goltra did and did not do under the contract.

"The cases leave no doubt that such a provision for termination of a contract is valid, unless there is an absence of good faith in the exercise of the judgment. Here, nothing of the kind is shown. Such a stipulation may be a harsh one or an unwise one, but it is valid and binding if entered into." Cases cited.

"On an appeal from a temporary injunction it often happens that, where there is a balance of convenience and doubt as to the issue, the status quo under the restraining order and the restoration should be maintained until a final hearing; but in this case, in the court hearing it, the issue was fully treated as if on final hearing. The right of the lessor to take over the fleet under § 8 of the contract, unless there was fraud in the judgment of termination by the Chief of Engineers, the lessor, of which we have found no evidence, is clear. We think, therefore, the injunction should be dissolved and the fleet restored to the lessor.

"The claim that the petitioner has been deprived of his property without due process of law has no substance as a reason for sustaining the temporary injunction appealed from. He has had, and is having, due process in this very proceeding, and, on that issue, the decision must go against him whether the taking possession of the boats by Colonel Ashburn was warranted or not.

"If Colonel Ashburn committed a breach of the peace or illegally injured any person in his taking possession, he is responsible to proper authority and to the person injured; but that does not affect the rights of the lessor under this lease or the vindication of them in this review. * * * The cause is remanded to the District Court for further proceedings in conformity with this opinion."

Following this decision, the appellant, on September 26, 1927, filed a pleading designated as amended and supplemental bill of complaint. And this was met by a motion to dismiss, which was sustained by said District Court on the grounds:

(1) That the lease having terminated by limitation of time, there is no substantial relief which a Court of Equity can grant, and

(2) That the Supreme Court of the United States has determined the merits of the controversy adversely to appellant.

An appeal from this order of the said District Court brings the matter again before this court to review the motion to dismiss.

The learned District Judge in his memorandum of oral opinion in sustaining the motion to dismiss said:

"I think, gentlemen, as to the question of a temporary injunction and of the granting thereof by this Court, the questions presented now by this bill are merely moot questions. I have no doubt of that proposition upon the face of the bill. * * * But there is another point involved. If I can still read English the Supreme Court clearly decided the merits of this case on the appeal from this Court, from the order by this Court granting a temporary injunction. No language can be plainer upon that point than the language used by the Supreme Court itself. Whether it intended to do it or not; whether under the case and facts before it, according to the ancient practice and procedure, it had a right to do it or not, is outside of the question. Perhaps it did not intend to do so. But, nevertheless did so in plain and unmistakable language."

■ Appellant argues at length and with a great deal of feeling that, having been deprived of the possession of the property, the period in which he had a right to exercise his right of option to purchase should be extended, and that he should be permitted to

buy the property under the terms and provisions contained in the lease. But the Supreme Court has held that the lease was lawfully terminated. Also he argues that the amended and supplemental bill of complaint, having set up new and additional facts charging that the actions of the Secretary of War in canceling and terminating the lease were not in good faith, but as a result of conspiracy and fraud, he is entitled to have a hearing on the merits of the controversy.

The original bill charged conspiracy, charged arbitrary action, both of which involve bad faith; and yet the Supreme Court of the United States found no facts which bore upon the good faith of the actions of the officers of the government. The supplemental bill merely expands the allegations of the original complaint by repetition without altering the facts upon which the Supreme Court passed.

■ The allegations in the amended and supplemental bill that John W. Weeks, as Secretary of War, had no power or authority under the terms of said contract to terminate the same, that the alleged exercise of judgment by him was not in good faith, but unlawful, and a part of a conspiracy to unlawfully and wrongfully deprive plaintiff of his property, and was not the exercise of the judgment of the Secretary of War or the Chief of Engineers, that the Chief of Engineers, the lessor, exercised no judgment of his own in the matter of terminating said contract, are mere conclusions of law.

The only additional fact alleged, the letter disclosing the ground upon which the Engineer acted, which is supposed to indicate that he did not exercise the independent judgment of a lessor, is insufficient to differentiate the new bill from the old.

This very matter, however, upon petition for rehearing to the Supreme Court, was urged upon the Supreme Court, and did not serve to alter its decision. Besides, as stated in the opinion of the Supreme Court, the Engineer, and all other officers of the government, were mere agents to declare and execute the will of the War Department, and all such officers acted upon competent authority.

It may have been an unusual course of procedure for the Supreme Court of the United States to decide the issues in the case upon an appeal from a hearing upon an application for a temporary injunction. Nevertheless, it appears that the admitted facts convinced the Supreme Court that appellant could not have the relief prayed. It is obvious that, even upon temporary hearing, as upon motion to dismiss, in a proper case, the rights of the parties may appear so conclusive as to make further action a work of supererogation. Upon substantially the same pleadings plaintiff is again applying for a temporary injunction. He is asking in his supplemental bill for that which the Supreme Court held he was not entitled to have upon his original bill. Inasmuch as the supplemental bill adds nothing substantial to the original bill, to grant the relief prayed would be to fly in the face of the decision of the Supreme Court.

■ The lease provided for termination thereof at the discretion of the Secretary of War. That he may exercise this discretion upon his own judgment, if done in good faith, without review by the courts, is sustained by abundant authority. The Supreme Court held that he did so terminate the lease in good faith. Having so held in plain and unmistakable language, the action of the lower court in dismissing the amended and supplemental bill of complaint was correct, and will have to be sustained.

Having heretofore held that, under the decision of the Supreme Court of the United States, the contract between the parties has been terminated and canceled, all rights therein which the appellant may have had are consequently terminated and ended, and a decision by this court upon the moot question of whether his time to exercise his option could be extended would be of no benefit to any of the parties concerned. Neither would it be of any benefit for this court to comment upon the actions of the officers of the government in taking the action which they did, and in attempting to deprive this appellant of his property by force, instead of by the exercise of proper procedure in the courts of the United States, which are established and maintained by the government for the purpose of orderly settling matters which are in dispute. We might be tempted to indulge therein were it not that the suggestions of Mr. Justice McReynolds in the case of Goltra v. Weeks et al., supra., are both satisfactory and complete.

We are constrained to hold that the action of the lower court should be, and the same is, affirmed.