**JAMISON COAL & COKE CO. v.
GOLTRA et al.**

**No. 12823.**

Circuit Court of Appeals, Eighth Circuit.
July 27, 1944.

Rehearing Denied Aug. 23, 1944.

Lon O. Hocker, of St. Louis, Mo. (Jones, Hocker, Gladney & Grand and James C. Jones, Jr., all of St. Louis, Mo., on the brief), for appellant.

William G. Pettus, Jr., of St. Louis, Mo. (Nagel, Kirby, Orrick & Shepley and Frank H. Fisse, all of St. Louis, Mo., on the brief), for appellees-executors.

Henry T. Ferriss, of St. Louis, Mo. (Alvan J. Goodbar, of St. Louis, Mo., on the brief), for appellees-interveners.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellant, Jamison Coal and Coke Company, a Pennsylvania corporation, brought suit in the district court against the executors of the estate of Edward F. Goltra, deceased, asking the court to declare an equitable lien upon funds in the custody of the defendants and to decree the specific performance of a written contract. Erastus Wells, J. Clark Streett and Tom K. Smith, Trustees, as creditors of the decedent's estate, intervened on behalf of the defendant executors. Motions of the defendants and interveners to dismiss the petition were sustained and a judgment of

dismissal was entered from which this appeal is taken.

The cause of action alleged in the petition is based upon a written contract dated May 6, 1932, between Goltra as party of the first part and plaintiff as party of the second part, and upon the circumstances leading to and attending its execution.

The contract, which is made a part of the petition, recites that Goltra was then asserting a claim in damages against the United States and that bills were pending in Congress, not then enacted, for the purpose of enabling Goltra to bring suit on his claim and prosecute it to judgment; that Goltra had requested of plaintiff financial assistance to enable him to pay in part his expenses in procuring the enactment of the bills in Congress and in prosecuting the litigation; and that plaintiff owned $153,000 face value and unpaid interest coupons of an issue of mortgage bonds of the Mississippi Valley Iron Company of which corporation Goltra was an officer and stockholder.

Following these recitations the contract provided that the plaintiff on its part would furnish Goltra $2,500 concurrent with the execution of the contract and in the event the bills were enacted by Congress advance the further sum of $2,500 as soon as Goltra should bring his suit against the United States.

In consideration of the promised advancement by the plaintiff, Goltra agreed "that in the event he successfully prosecutes his claim and recovers a final judgment therein" he would "on the payment thereof", after deducting expenses, "apply the proceeds remaining in the purchase" at par of the bonds of the Iron Company owned by plaintiff in an amount proportionate to the amount of the net proceeds of the judgment; and in the event the net recovery should exceed $350,000 he would purchase all of the bonds of the Iron Company owned by plaintiff. The written contract, however, contains no correlative promise on the part of plaintiff to sell and deliver any of the bonds to Goltra.

An enabling act conferring jurisdiction upon the Court of Claims to hear, consider and render judgment upon Goltra's claim was approved April 18, 1934, 48 Stat. 1322, c. 150, and suit was accordingly commenced thereon.[1]

In accordance with the provisions of the contract the plaintiff advanced $5,000 to Goltra. After Goltra's death in 1939 the litigation was carried on by his executors. A judgment for $350,000 was finally recovered, and the net proceeds thereof in the amount of $281,415 was paid to the executors in 1943.

The facts and circumstances leading to the making of the contract of May 6, 1932, as alleged in the petition, may be stated briefly. The story relates principally to the value of the bonds referred to in the contract and the manner in which the plaintiff acquired them. At the request of Goltra the plaintiff during October, November, and December, 1920, sold coke to the Mississippi Valley Iron Company on open account in the amount of $167,377.40 for use in the manufacture of pig iron at St. Louis, Missouri. At that time Goltra represented that the Iron Company was short on working capital, but expected to accumulate capital from the proceeds of orders for pig iron then on hand. Soon thereafter the pig iron market suffered a collapse and the Iron Company, as a result, was compelled to cease the manufacture of pig iron. The account was not paid, and at the request of Goltra the plaintiff took trade acceptances in payment thereof. The trade acceptances were not paid when due, and thereafter, at Goltra's request, plaintiff accepted in their place 305 $500 mortgage 7% gold bonds issued by the Iron Company of the aggregate face value of $153,000, maturing in 1931 and bearing interest at 8% after due.

At the time of his death Goltra was insolvent, and claims in excess of $300,000 have been filed and allowed against his estate. The Mississippi Valley Iron Company has been adjudged a bankrupt, and it is alleged that the bonds issued by it and owned by plaintiff "have little or no value." The petition does not state when the Iron Company became insolvent or when the bonds ceased to have any substantial value. It is obvious from the foregoing facts, however, that both these events had oc-

---

[1] For a history of the litigation upon Goltra's claim prior and subsequent to 1934 see: Weeks v. Goltra, 8 Cir., 7 F. 2d 838; Petition of United States, 263 U.S. 389, 44 S.Ct. 130, 68 L.Ed. 351; Goltra v. Weeks, 271 U.S. 536, 46 S.Ct. 613, 70 L.Ed. 1074; Goltra v. Davis, 8 Cir., 29 F.2d 257; Goltra v. Inland Waterways Corporation, 60 App.D.C. 115, 49 F.2d 497; United States v. Goltra et al., Executors, 312 U.S. 203, 61 S.Ct. 487, 85 L.Ed. 776.

curred, or were imminent, at the time the contract of May 6, 1932, was executed. All the bonds were delinquent and unpaid at .that time.

Upon the basis of the net recovery of $281,415, the petition alleges that the executors were obligated under the. terms of the contract to apply $105,707 to the purchase of bonds, and that plaintiff had tendered and offered to deliver to the executors 212 of the bonds involved of the aggregate face value of $106,000 upon payment to it of $105,707, and that the tender had been refused.

The petition further alleges that under the written agreement of May 6, 1932, plaintiff has an equitable lien on the net proceeds of the judgment collected by the executors to the extent of $105,707; that said sum is a trust fund in the hands of the executors for the purchase price of the bonds; and that plaintiff has no adequate remedy at law.

It is also alleged that there was a moral and equitable obligation on the part of Goltra, in addition to the $5,000 advanced for expenses, to protect the plaintiff against loss on its transactions with the Iron Company.

The relief asked is a decree (1) declaring an equitable lien and (2) granting specific performance of the contract of May 6, 1932. There is no demand for a general judgment to be satisfied out of any property belonging to the estate of Goltra.

■ The relief demanded is dependent upon the construction and legal effect of a contract entered into in Pennsylvania. The suit was brought in equity in a federal court in Missouri. Jurisdiction is predicated upon diversity of citizenship. Under these circumstances, is the interpretation of the contract governed by the laws of Pennsylvania, by the laws of Missouri, or by the "federal common law"? It has not been definitely settled by the Supreme Court whether the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, applies in such a case. See Note 3 to Mr. Justice Jackson's concurring opinion in D'Oench, Duhme & Co., Inc., v. Federal Deposit Insurance Corporation, 315 U.S. 447, 467, 62 S.Ct. 676, 86 L.Ed. 956. We need not determine this question here. The parties have presented the case on the theory that the legal effect of the contract is controlled by federal law and have cited no cases from either Pennsylvania or Missouri. We assume, therefore, that the laws of both. states are the same as the federal law.

First to be considered is whether the contract of May 6, 1932, viewed in the light of attending circumstances, created an equitable lien in favor of plaintiff upon a part of the proceeds of the judgment recovered by Goltra against the United States.

■■ Since the question here arose on a motion to dismiss plaintiff's petition, there is no dispute about facts to be considered. It is not alleged that prior to the execution of the contract of May 6, 1932, Goltra was indebted to plaintiff, or that he was under any legal obligation to purchase the bonds. The Iron Company, not Goltra, issued the bonds owned by the plaintiff. The only obligation of Goltra to the plaintiff arose out of the contract of May 6, 1932, and depended upon the consideration of $5,000 therein expressed. If Goltra felt, as plaintiff argues, that he was under some intangible moral obligation to plaintiff to save it from loss on the bonds, that fact is immaterial to the existence or non-existence of an equitable lien. The $5,000 was sufficient legally to support a valid promise, and the assumed moral consideration would· add nothing. Moreover a moral consideration will not support an equitable lien, 33 Am.Jur., Liens, § 18; 37 C.J., Liens, §ʿ24; Stansell v. Roach, 147 Tenn. 183, 246 S.W. 520, 526, 29 A.L.R. 143.

The contract relied upon is a contract to purchase bonds in the future. The promise of Goltra to purchase was a contingent one; it was contingent (1) upon the adoption of an enabling act by Congress, (2) upon obtaining a judgment in litigation pursuant to such legislation, and (3) upon the payment by the United States of the judgment when and if rendered in such litigation. These contingencies were all conditions precedent, and the agreement to purchase did not become effective until they had all occurred approximately 11 years after the contract was executed. No claim is made that any right or interest in or lien upon the proceeds of the judgment in fact resulted from the contract of May 6, 1932, while the proceeds of that judgment remained in the possession of the government. No notice of the existence of the contract or any claim thereunder was given to the government. The promise to "apply the proceeds" of the judgment to the· purchase of bonds was effective only "on the payment thereof" to Goltra. No assignment, equitable, or otherwise, is involved.

All the facts and circumstances alleged in the petition considered together fail in our opinion to create an equitable lien.

An equitable lien is a right, not recognized by law, to have a fund or specific property applied in whole or in part to the payment of a particular debt or obligation. It is not an estate in the thing itself nor a right which may be the basis of a possessory action. It is merely a charge upon the thing for the purpose of security. 33 Am.Jur., Liens, § 18; Pomeroy's Equity Jurisprudence, 4th Ed., §§ 1233, 1234, 1235, 1236.

The existence of an equitable lien can not be determined from a mere consideration of the general form of a transaction. It depends upon the application of established principles of equity. The intention of the parties to charge as security a particular property or a fund to be acquired in the future must clearly appear. Jackman v. Newbold, 8 Cir., 28 F.2d 107, 112, 62 A.L.R. 729. In the Jackman case the court quoted with approval 1 Jones on Liens, § 48; "A mere agreement, whether by parol or in writing, to pay a debt out of a designated fund, when received, does not give an equitable lien upon that fund, or operate as an equitable assignment of it. The agreement is personal merely."

In B. Kuppenheimer & Co. v. Mornin, 8 Cir., 78 F.2d 261, 264, 265, 101 A.L.R. 75, a lien was claimed to result from a promise to pay a note out of the proceeds of a sale or mortgage of land, and this court affirmed an order dismissing the suit. The court said: "There is, of course, a vast difference in law between an *order* to pay a debt out of a particular fund and a *promise* to pay out of such a fund. That the former, when accepted, is binding, is almost, if not quite, hornbook law. That the latter is not binding is well-nigh as well settled." (Italics supplied.) Citing authorities. See also State Central Sav. Bank v. Hemmy, 8 Cir., 77 F.2d 458; Union Trust Co. of Maryland v. Townshend, 4 Cir., 101 F.2d 903, 911; Lone Star Cement Corp. v. Swartwout, 4 Cir., 93 F.2d 767; 33 Am.Jur., Liens, § 20; 37 C.J., Liens, § 21.

In the Mornin case, supra, the court recognized that the strict rules governing equitable liens and equitable assignments have been relaxed in cases involving contingent fees of attorneys and in cases of liens on personal property put up and held as collateral security. Citing Ingersoll v. Coram, 211 U.S. 335, 29 S.Ct. 92, 53 L.Ed. 208; Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 41 L.Ed. 865; Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530,—cases relied upon by the plaintiff here. One of the equitable grounds for such relaxation is that "in the case of an asserted lien by a lawyer for his fee on the money recovered as the result of litigation, * * * the efforts of the lawyer bring the fund into existence. In such case it may be said, arguendo, that the lawyer asserting the lien is * * * a joint adventurer." B. Kuppenheimer & Co. v. Mornin, supra. And see Geddes v. Reeves Coal & Dock Co., 8 Cir., 20 F.2d 48, 49, 54 A.L.R. 282.

The identical point here involved has been considered and the authorities reviewed at length by the Fourth Circuit Court of Appeals in Lone Star Cement Corporation v. Swartwout, supra, and Union Trust Co. of Maryland v. Townshend, supra, and that court's conclusion agrees with the conclusion of this court in the Mornin case, supra. The Swartwout case involved a claimed equitable lien upon the proceeds of accounts which the debtor had agreed to pay to the claimant when collected, and the court held that no lien was created.

In the Townshend case, supra [101 F.2d 911], Judge Parker, speaking for the court, after reviewing the authorities, said: "The reason at the basis of the rule that a mere agreement to pay a debt out of a fund creates no lien on the fund, is that, where there is no appropriation of a part of the fund to the payment of the debt, the whole remains under the unfettered dominion of the debtor, and the failure on his part to carry out the agreement is a mere breach of the contract, no different in character from his failure to pay the debt." Citing Benedict v. Ratner, 268 U.S. 353, 364, 45 S.Ct. 566, 69 L.Ed. 991. See, also, Evans v. Rice, Trustee, 96 Va. 50, 30 S.E. 463; American Pin Co. v. Wright, 60 N.J.Eq. 147, 149, 46 A. 215, 216.

It will be observed that the contract of May 6, 1932, contains no reference to a lien and no express purpose to create one upon the proceeds of the judgment. Such an intention must be derived from construction of the contract. In Ingersoll v. Coram, supra, 211 U.S. at page 368, 29 S.

Ct. at page 100, 53 L.Ed. 208, the Supreme Court, in construing a contingent attorney fee contract, said: " * * * the fact that there was no primary personal responsibility in J. A. Coram [the client] specially serves to stamp the agreement in issue as declaring a purpose to create a lien." Plaintiff in arguing that the present contract must be construed to create a lien, and, citing as authority the above statement from the Coram case, says that "there was no personal obligation on the part of Goltra to purchase the bonds in question * * * the only obligation on the part of Goltra under that contract was to apply a certain portion of the proceeds of the judgment which he might recover against the United States to the purchase of those bonds."

Assuming that plaintiff's interpretation of the contract in this respect is sound, it does not show that a lien was intended. One of the elements of an equitable lien, security for an obligation, would be entirely wanting, because Goltra was under no separate, pre-existing obligation to the plaintiff, and his only obligation under the contract on plaintiff's theory is the promise to pay money. Such a promise does not create a lien.

▪ The second question is whether the court was right in denying to the plaintiff the equitable remedy of specific performance. This must be determined from the character of the contract and the facts pleaded. The mere fact that a contract has been breached does not determine the character of the relief which may be granted.

▪ The equitable remedy of specific performance is not a matter of right. It rests in the sound judicial discretion of the court to grant or to reject an application invoking this power according to the circumstances of each case. Pope Mfg. Co. v. Gormully, 144 U.S. 224, 237, 12 S. Ct. 632, 36 L.Ed. 414; Nickerson v. Nickerson, 127 U.S. 668, 675, 8 S.Ct. 1355, 32 L.Ed. 314; Barr v. Carnahan, 8 Cir., 34 F.2d 759, 760.

▪ It is well settled that specific performance will not be granted when there is an adequate remedy at law. Buzard v. Houston, 119 U.S. 347, 7 S.Ct. 249, 30 L.Ed. 451; Trainor v. Mutual Life Ins. Co., 7 Cir., 131 F.2d 895, 897, 898; Bernier v. Griscom-Spencer Co., C.C.S.D.N.Y., 161 F. 438, 442; 49 Am.Jur., Specific Performance, § 10. Since the remedy at law is adequate to recover a sum of money, 19 Am.Jur., Equity, § 119; 30 C.J.S., Equity, § 27, a court of equity will not specifically enforce a contract to pay money. Raton Water Works Company v. Raton, 174 U.S. 360, 19 S.Ct. 719, 43 L.Ed. 1005; Hull v. Hull, 117 Iowa 63, 90 N.W. 496, 497. Compare Russell v. Clark's Executors, 11 U.S. 69, 89, 90, 7 Cranch 69, 89, 90, 3 L.Ed. 271; Agency of Canadian Car & F. Co. v. American Can Co., 2 Cir., 258 F. 363, 366, 6 A. L.R. 1182.

▪ It is true that Goltra's insolvency is a circumstance to be considered in determining whether the remedy at law by way of a money judgment is adequate. Texas Co. v. Central Fuel Oil Co., 8 Cir., 194 F. 1, 11; 49 Am.Jur., Specific Performance, § 13; 58 C.J., Specific Performance, § 9. But it is a circumstance to be considered also in connection with whether specific performance would enable the plaintiff to obtain a preference over Goltra's other creditors. One of the cardinal rules for the guidance of a court of equity in the exercise of its discretion in granting or denying an application for enforcement is that it must appear that specific performance will result in no injustice. Willard v. Tayloe, 75 U.S. 557, 567, 8 Wall. 557, 567, 19 L.Ed. 501. Here it appears from the averments of the petition that claims have been filed and allowed against the estate of Goltra in excess of $300,-000, and that the estate is insolvent. Clearly specific performance would enable plaintiff to obtain a preference over the other creditors. Under these circumstances this court can not say that the trial court abused its discretion in denying equitable relief.

Two other facts are presented by the petition which the court may properly consider in the exercise of a sound discretion in determining both the claim to an equitable lien and the alleged right to specific performance.

▪ One of the settled principles of equity is that a contract based on a hazard will not be enforced. Mississippi & M. R. Co. v. Cromwell, 91 U.S. 643, 645, 23 L.Ed. 367. Such was the character of the contract of May 6, 1932. Prior to the execution of that contract plaintiff had no interest in Goltra's claim against the United States. Further, that claim was then barred by court decisions and the lapse of time. The bonds which plaintiff had accepted in payment for the coke sold to the Iron Company in 1920 had then proved to

be worthless. Only in the event fortune brought success to Goltra's attempt to collect his claim against the United States through the contingencies contemplated in the contract did plaintiff for an advancement of $5,000 have a chance to recover a large part of its loss of more than $150,000. The $5,000 advanced was not a loan. There was no obligation to repay it in any case. It was merely a hazard, like a chance in a lottery. A court of equity is not bound to shut its eyes to the character of the transaction, or to lend its aid to carry out such an enterprise of chance. It is not an abuse of discretion to leave the party seeking relief to his remedy at law.

Much space is devoted in the briefs to the subject of champerty and maintenance. The appellees contend that the contract is champertous and therefore not enforceable.

 "Champerty consists of an agreement whereby a person without interest in another's suit undertakes to carry it on at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation." 14 C.J.S., Champerty and Maintenance, § 1.

By the terms of the contract of May 6, 1932, the plaintiff agreed to advance to Goltra $5,000 "to enable him to pay in part the expenses which he has been obliged to incur in attempting to procure the enacting of the Bills heretofore mentioned and the institution of litigation in the event such Bills are hereafter enacted", in consideration of which the plaintiff was to receive a part of the proceeds of the litigation. Since the bonds involved had little or no value, the agreement was at least champertous in form.

The contract having been made in Pennsylvania and the suit brought in a federal court in Missouri, the question is presented whether its enforceability is controlled by the lex loci contractus or the lex fori. In diversity of citizenship cases federal courts must follow the conflict of laws rules prevailing in the states in which they sit. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Order of United Commercial Travelers v. Meinsen, 8 Cir., 131 F.2d 176, 179. Federal courts consistently refuse to enforce contracts which are against the public policy of the state in which the court sits. Griffin v. McCoach, 313 U.S. 498, 503,

506, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462; Union Trust Co. v. Grosman, 245 U.S. 412, 38 S.Ct. 147, 62 L.Ed. 368; Logan & Bryan v. Postal Telegraph & Cable Co., C.C.E.D.Ark., 157 F. 570, 586, 587. Compare Casserleigh v. Wood, 8 Cir., 119 F. 308. In Missouri the rule is that foreign contracts contrary to the public policy of Missouri will not be enforced. Maxey v. Railey & Bros. Banking Co., Mo. App., 57 S.W.2d 1091, 1093.

In Missouri not only is a champertous contract void, Curry v. Dahlberg, 341 Mo. 897, 110 S.W.2d 742, 748; Taylor v. Perkins, 171 Mo.App. 246, 157 S.W. 122, 124; Burnes v. Scott, 117 U.S. 582, 589, 6 S.Ct. 865, 29 L.Ed. 991; but a contract merely "savoring of the character of maintenance" is void as against public policy. Ryan v. Miller, 236 Mo. 496, 139 S.W. 128, 132, 133, Ann.Cas.1912D, 540. It is not necessary, therefore, to hold that the contract in this case comes strictly within the technical definition of champerty in order to sustain the ruling appealed from. The contract so far savored of the character of champerty as to justify the denial of equitable relief based upon its provisions.

For the foregoing reasons the judgment appealed from is affirmed.