Carl K. HAHN, Respondent,

v.

Corinne F. HAHN, Appellant.

No. 45484.

Supreme Court of Missouri.

En Banc.

Jan. 14, 1957.

Cedric Siegfried, Independence, and Walter A. Raymond, Kansas City, for appellant.

David W. Barry, Eugene G. Wetzel and Meyer, Smith, Wetzel & Barry, Kansas City, for respondent.

STORCKMAN, Judge.

This partition action, brought by the plaintiff against his former wife, involves residence property jointly owned by them while they were married. By her cross action defendant sought to have an equitable lien imposed on her former husband's interest in the property on the theory that

she had made payments of principal and interest on a deed of trust encumbering the property and had paid the cost of repairs and improvements at plaintiff's request and in reliance upon his promise to repay her the amount of money so advanced out of his share of the property. The issues in the partition suit were not contested. The hearing on the cross action, tried by the court without a jury, resulted in a judgment adverse to the defendant. She appealed to the Kansas City Court of Appeals where her appeal was dismissed as premature without a consideration on the merits. Hahn v. Hahn, Mo.App., 287 S.W.2d 337. Because of this holding we granted defendant's application to transfer the appeal to this court. Plaintiff will sometimes be referred to as Mr. Hahn and the defendant as Mrs. Hahn.

The parties were married on October 15, 1928. In 1938 they purchased the property in question and took title in both their names, as husband and wife. They executed a promissory note for the balance of the purchase price and, as security, gave a deed of trust on the property in favor of Home Owners Loan Corporation. On August 9, 1954, the balance due on this obligation was $870.72. Mrs. Hahn secured a divorce from her husband on October 23, 1952, and thereafter Mr. Hahn borrowed from a Mr. Klapmeyer $2,200 to pay an allowance to Mrs. Hahn in the sum of $2,000 as lump sum alimony and her attorney's fees in the amount of $200. This obligation, secured by a deed of trust on Mr. Hahn's interest in the property, was wholly unpaid at the time of trial. Mr. Hahn filed his action in partition April 13, 1953.

In a conference before the court at the beginning of the trial on July 15, 1954, counsel for the parties agreed that the real estate was not capable of division in kind and that an order of sale should be made and that the balance due on the principal of the HOLC loan with interest thereon should be paid out of the proceeds. The court and counsel then agreed that "plaintiff's prima facie case of partition has been made" and that "the only issue is the division of the proceeds." Counsel for Mr. Hahn suggested that the "defendant has become plaintiff and the plaintiff has become defendant, and I propose to have the court require that the defendant proceed with the action." The court concluded the conference with the statement: "I think that with those agreements there is a case made for the plaintiff, and it is a question on the cross action now."

The defendant then proceeded without objection. Mrs. Hahn testified on her own behalf with respect to the payments she claimed she had made on the premises and for which she was asking an equitable lien, the details of which are not presently important. In the course of her testimony plaintiff objected on the ground that the payments for repairs and improvements on the property had not been pleaded. The defendant obtained leave to amend her pleadings and further hearing of the case was continued to September 8, 1954.

Further, on July 15, 1954, the court entered its judgment ordering a sale of the property in the partition action and appointing a special commissioner for that purpose. The judgment recited that "all parties waive the right to appeal from said order and judgment and consent that said property may be advertised and sold as expeditiously as possible."

On August 30, 1954, the court entered its order approving the special commissioner's sale of the property for the total sum of $14,325. The order recited that the parties had agreed in writing that the existing mortgage encumbrances on the property should be paid out of the proceeds of the sale and it was so ordered. Expenses of the sale, the fee of the special commissioner, plaintiff's attorney fees and other items were also ordered paid out of the proceeds of the sale. The judgment then recited "that said Special Commissioner shall hold and retain subject to the further order of

this Court all of the remainder of the proceeds of said sale."

Amended pleadings having been filed, the hearing of the cross action was resumed on September 8, 1954. Mrs. Hahn testified further and at the conclusion of her case the plaintiff filed his written motion in which he moved the court to enter judgment in favor of plaintiff on the defendant's cross action.

Plaintiff's motion was sustained and the court entered its judgment concluding: "Therefore, it is ordered and adjudged by the Court that defendant Corinne F. Hahn have and recover nothing on her cross petition, and that plaintiff recover of said defendant costs incurred in this behalf, and that execution issue therefor."

■ The Kansas City Court of Appeals raised and decided the prematurity of the appeal sponte sua. When the motion for rehearing was filed the appellant was joined by the respondent in asking for a review on the merits. It is the right and duty of an appellate court to determine the question of its appellate jurisdiction, even though not raised by the parties, in order to repress unnecessary appeals. However, when permissible, the court should avoid the disposition of appellate cases on procedural grounds. Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S.W.2d 657, 659[1]; 42 V.A.M.S. Supreme Court Rule 1.28; Section 506.010 RSMo 1949, V.A.M.S.

Section 510.180 permits the consolidation of actions and further provides that "the court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counter-claim, or third-party claim, or any separate issue or of any number of claims, cross-claims, counter-claims, third-party claims, or issues."

Section 512.020, the general appeal section, provides for appeals from any interlocutory judgment in partition "which determine the rights of the parties, or from any final judgment in the case."

Supreme Court Rule 3.29 deals with the right of appeal of separate judgments in jury cases and in cases tried before the court without a jury. So far as applicable here, the rule provides: "When a separate trial of any such claim is had before the court without a jury, the court may order a separate judgment entered which shall be deemed a final judgment for the purposes of appeal within the meaning of Section 126 [§ 512.020] or the court may enter a separate interlocutory judgment and order it held in abeyance until other claims, counterclaims or third party claims in the case are determined, in which event appeal shall not lie until a complete judgment disposing of all claims is entered. In case a separate final judgment is entered the court may stay its enforcement until other or all final judgments in the cause are entered and may prescribe such conditions as are necessary to secure and protect the relative rights of all parties."

The question as to when a trial court's judgment is mature for purposes of appeal has been considered in many cases in recent years. It would serve no useful purpose to review the decisions here. That has been done many times before and perhaps most recently in Pizzo v. Pizzo, Mo., 295 S.W.2d 377, by the court en banc. This case is the latest pronouncement of this court on the subject matter. It discusses Mothershead v. Milfeld, 361 Mo. 704, 236 S.W.2d 343, cited by the appellant, as well as other cases.

The Pizzo case was an action in five counts. Three related counts, involving title to real estate, were tried together by the court and a separate judgment was rendered on each count in favor of the plaintiff and against the defendants. In deciding that the judgment was final for purposes of appeal, this court stated, 295 S.W.2d 381: "The record indicates the exercise of discretion in favor of a separate judgment and nothing appears to indicate an intention that the judgment should be interlocutory or that its enforcement should

be stayed, 'until other or all final judgments in the cause are entered.' In such situation we think the separate judgment entered on these counts should be construed as an *order for a separate judgment* within the meaning of Supreme Court Rule 3.29 and, accordingly, it must 'be deemed a final judgment for the purposes of appeal within the meaning of' Section 512.020 RSMo 1949, V.A.M.S. If the trial court wanted this judgment to be interlocutory or held in abeyance, or its enforcement stayed, it should have so provided."

■ The judgment entered on defendant's cross action has all the formal attributes and appearance of a final judgment. It was not denominated "a separate interlocutory judgment" nor did the court "order it held in abeyance." The record discloses that there were no "other claims, counterclaims or third party claims in the case" to be determined. See Rule 3.29. That the cross action was the only remaining live issue in the case is also apparent from the statements of the court and counsel made on the first day of the hearing. We hold that it is a final judgment for purposes of appeal. Again, in the language of the Pizzo case, we say: "If the trial court wanted this judgment to be interlocutory or held in abeyance, or its enforcement stayed, it should have so provided."

Whether the appeal is justified as an interlocutory judgment in partition under § 512.020 need not be considered in view of our holding. It may be noted, however, that the section allows an appeal "from any interlocutory judgments in actions of partition which determine the rights of the parties."

In her second amended answer and cross action the defendant alleged that before and after the divorce she had paid the monthly installments to the holder of the mortgage note and had also paid for improvements and repairs to the premises. She alleged that this money had been advanced out of her own funds "at the request of the plaintiff and upon his promise and agreement that he would reimburse her for said payments in cash or out of his interest in said premises; that defendant made said payments in reliance on said promise and understanding; that by reason thereof the defendant has acquired and does now have and hold an equitable lien on said property." Defendant alleged that she had no adequate remedy at law and that unless an equitable lien and title was adjudicated in her favor she would suffer irreparable loss and damage.

In his amended reply the plaintiff alleged, inter alia, that defendant had had the use and occupancy and the rentals from the real estate since the parties were divorced and that the sums expended by the defendant since the divorce did not exceed the rental she had received for which no accounting had been made, and that the plaintiff was not indebted to the defendant for any such payments or sums expended.

The testimony of Mrs. Hahn tended to prove that she and her husband purchased the property in June 1938 for $3,850; that they paid ten per cent down from joint funds and executed a note and deed of trust for the balance of the purchase price. The monthly installments were between $30 and $35 per month and covered principal and interest, taxes and insurance. Mr. Hahn made the payments for about a year, at which time he told her he could not make further payments and asked her to make them, telling her that if she made the payments he would see that she got her money back. From the early part of 1939 she paid all of the monthly installments. After the divorce Mr. Hahn had a room in the house and continued to live there. He continued to tell her that he couldn't make the payments and asked her to make them. She also paid for improvements and repairs to the premises.

She testified that she paid these items from her own savings account and from her interest in a chicken business. From 1943 to February 1950 she worked outside of her home as a dispatcher for the Yellow Cab Company and during one interval in a clerical position for the Office of Price Administration. While so employed she made payments from her salary. Thereafter she kept roomers and boarders including her mother. She testified that the payments were made from her own funds and Mr. Hahn never paid anything from 1939 on. She testified that from 1944 to 1952 she earned $14,496 by her work and that during the same period her husband's income was only $1,100.

The evidence of Mrs. Hahn tends to prove that she was not a mere volunteer when she advanced the money to pay the monthly installments. It also tends to prove that it was advanced from her own funds at her husband's request under an agreement that he would repay it.

Her testimony in regard to the time and manner of repayment was that "if he didn't get the money any other way he would give it to me when the property was sold." On another occasion she testified that he was always wanting to sell the property and that he promised her that if not repaid sooner he would see that she was repaid "when the property was sold." And, finally, she answered in the affirmative the following leading question of her counsel: "And is it your testimony that during this period of time Mr. Hahn represented to you that he would either pay you or see that you got your money back out of the sale of the house?" In essence, then, her testimony is that her husband promised to repay her the amount she advanced and if not paid sooner she would be paid *when* the property was sold or, perhaps most favorably to her claim of equitable lien, that he would see that she got her money back "out of the sale of the house."

The general limits of the doctrine of equitable lien are described in Capen v. Garrison, 193 Mo. 335, 92 S.W. 368, 372, 5 L.R.A.,N.S., 838, wherein it is stated: "The doctrine of equitable lien follows closely on that of subrogation. They both come under the maxim 'Equality is equity,' and they are applied only in cases where the law fails to give relief and justice would suffer without them. But the doctrine of equitable lien has its prescribed boundaries as well as that of subrogation; it is not a limitless remedy to be applied according to the measure of the conscience of the particular chancellor any more than, as an illustrious law writer said, to the measure of his foot. The right to an equitable lien arises when a party at the request of another advances him money to be applied, and which is applied, to the discharge of a legal obligation *of that other* but when, owing to the disability of the person to whom the money is advanced, no valid contract is made for its repayment." (Italics ours.) Although the Capen case has been questioned in some respects, the language quoted has been approved as lately as Williams v. Vaughan, 363 Mo. 639, 253 S.W. 2d 111, 115. See also 53 C.J.S., Liens, § 4, p. 836.

33 Am.Jur., Liens, § 18, p. 428, states: "Such a lien cannot, however, be based only upon moral obligations, but must find a basis in established equitable principles." See also Jamison Coal & Coke Co. v. Goltra, 8 Cir., 143 F.2d 889, 892, 154 A.L.R. 1191.

A failure to repay money as agreed, standing alone, is not a sufficient reason for equity to intervene to decree an equitable lien. 53 C.J.S., Liens, § 4 note 80, p. 838.

We will assume, as appellant contends, that she, as a married woman, could, by virtue of Section 451.290 RSMo 1949, V.A.M.S., contract as freely as a femme

sole, not only with third persons but with her husband. Rudd v. Rudd, 318 Mo. 935, 2 S.W.2d 585; In re Woods Estate, 288 Mo. 588, 232 S.W. 671, 675. However, the evidence wholly fails to disclose a contract designed to impress a lien upon the interest of her husband during their marriage. We need not, therefore, discuss the authorities cited by appellant to support her contention that a husband may contract directly with his wife to convey to her all or a portion of his interest in an estate by the entirety. The evidence discloses no intent or purpose to disturb the existing estate by the entirety.

There is no proof of any contract between the parties that the husband was to pay all or any particular portion of the purchase price remaining unpaid. The fact that he paid on the note for a year, without more, fails to establish that the husband had, as between him and his wife, entered into a binding contract whereby he assumed to pay the joint and several obligations of the parties resulting from their execution of the purchase money note and deed of trust. Nor is any legal relationship disclosed that would impose this obligation solely upon the husband as a matter of law. The numerous authorities cited by appellant holding that one who pays the secured debts or liabilities *of another* is entitled to an equitable lien on the property encumbered are *not in point* under the circumstances of this case.

Nor do we think that the agreement shown by the evidence is sufficient to constitute an equitable lien or assignment upon the fund in the hands of the special commissioner for the payments made before the divorce. The general rule in this regard is stated as follows in 33 Am.Jur., Liens, § 20, p. 429: "In order to create an equitable lien by agreement, it is essential that the property or fund sought to be charged be distinctly appropriated to or as security for the payment of the debt or other liability in question. A mere expectation, or even an agreement, that a debt will be paid out of a particular fund, a mere promise by a debtor to pay a debt out of a particular fund due him, as soon as he receives it, and a promise to pay a certain debt out of the proceeds of the sale of certain property have been held, respectively, not to be a sufficient appropriation to create a lien thereon."

The construction we place upon the words of the agreement in evidence is that they were designed to fix the ultimate time for repayment of the advances made by Mrs. Hahn. They were not intended to pledge or appropriate the proceeds as security for the payment of the amount so advanced. The funds were not in existence or presently expected and no sale occurred until approximately 15 years after the original promise.

The evidence is wholly insufficient to establish that the defendant is entitled to an equitable lien for the money advanced by her during the marriage either on account of monthly payments or for improvements and repairs. A similar situation is well described in Cisel v. Cisel, 352 Mo. 1097, 180 S.W.2d 748, 750 [2]: "Here, whether or not she furnished the purchase money, the wife freely consented and intended when she purchased the property that title be taken in the names of her husband and herself with full knowledge of the effect of such a deed. Thereby a tenancy by the entirety was created which was later converted to a tenancy in common by the divorce decree." See also Darrow v. Darrow, Mo., 245 S.W.2d 834.

When the divorce occurred each of the parties became the owner of an undivided one-half interest in the property. Different rules attended this new relationship. These rules, although independent of the alleged agreement of the parties, are not in conflict with it. The

# 567

-right to compel contribution from a cotenant and to impose an equitable lien upon his interest is stated generally in 86 C.J.S., Tenancy in Common, § 66a (1), p. 441, as follows: "A tenant in common who purchases or discharges an outstanding title or encumbrance for the benefit of the common estate is, in the absence of any agreement or understanding to the contrary, entitled in equity to contribution from his cotenants for the expense thereof in proportion to their respective shares. Where one tenant in common of mortgaged land redeems the whole estate from the mortgage or from a foreclosure sale, or purchases or discharges an outstanding title or encumbrance, he is regarded as having a lien in the nature of an equitable mortgage or lien on the respective shares of the property belonging to his cotenants for proportional shares of the amount paid."

This statement of the rule is recognized in Missouri. See Bragg v. Ross, 349 Mo. 511, 162 S.W.2d 263, 265 [1], and Ridenour v. Duncan, Mo., 291 S.W.2d 900, 906 [8].

■ The right of a tenant to contribution from his cotenants in common may also extend to payments made for repairs and improvements, taxes and other expenses, depending upon the nature and circumstances of the particular expenditure. 86 C.J.S., Tenancy in Common, § 68, p. 448; Witcher v. Hanley, 299 Mo. 696, 253 S.W. 1002, 1004 [5]; Henry v. Steward, 363 Mo. 213, 250 S.W.2d 527, 529 [1]; Gearhart v. Gearhart, Mo., 213 S. W. 31, 33 [2].

■ We conclude, therefore, that the defendant's evidence was sufficient to establish her right to an accounting for expenditures made by her since the divorce and to an equitable lien as security therefor upon plaintiff's interest in the property and the proceeds of its sale. Darrow v. Darrow, Mo., 245 S.W.2d 834, 837 [3]. Mrs. Hahn's testimony tends

to prove that she was not a mere volunteer in making these post-divorce expenditures and that she expected repayment from Mr. Hahn in accordance with his obligation as a cotenant in common.

Plaintiff in his reply pleads by way of avoidance that Mrs. Hahn had the use and occupancy of the premises and received the rentals therefrom after the parties were divorced and has made no accounting to the plaintiff; that the expenditures made by Mrs. Hahn do not exceed the value of the rentals received by Mrs. Hahn and therefore the plaintiff is not indebted to her for any such payments or sums so expended. On appeal Mr. Hahn contends that "the Chancellor rightly found, under the evidence, that the one balanced the other." This view, however, overlooks the fact shown by the evidence that both cotenants, the plaintiff and the defendant, occupied the premises.

■ The general rule at common law is stated in 86 C.J.S., Tenancy in Common, § 46, p. 407: " * * * the generally accepted rule at common law is that a tenant in common who occupies all or more than his proportionate share of the common premises and who has not agreed to pay therefor or ousted or excluded his cotenant or cotenants is not liable, because of such occupancy alone, to his cotenants for rent or for use and occupation." This rule is cited and approved in Metzger v. Metzger, Mo.App., 153 S.W.2d 118, 122 [8]. See also Ragan v. McCoy, 29 Mo. 356, 367 and Bates v. Hamilton, 144 Mo. 1, 45 S.W. 641, 643.

■ The evidence further shows that Mrs. Hahn kept boarders for whom she provided meals as well as furnished lodgings. 86 C.J.S., Tenancy in Common, § 47, p. 414, states that "a tenant in possession is not accountable for other profits produced by his own efforts if no waste has been committed unless he has ousted or excluded his cotenants." The Ragan case, 29 Mo. 356, 368, held that a tenant

**568**

in possession was not liable to his cotenant for profits realized in the operation of a ferry on the common property where the rights of the cotenant had not been obstructed.

In the present state of the record there is no justification for charging Mrs. Hahn with rent or a share of the profits she may have made from the business conducted by her on the premises.

The judgment of the trial chancellor is reversed and remanded for further proceedings not inconsistent with the views herein expressed.

All concur.