Goldie **WILKINSON**, Appellant,

v.

Margaret Mary **TARWATER**, Respondent.

No. 51061.

Supreme Court of Missouri,

Division No. 2.

Sept. 13, 1965.

Donald L. Mason, John J. Hager, Kansas City, for appellant.

Shockley, Searing, Sandifer, Reid & Koger, Kansas City, for respondent.

STORCKMAN, Judge.

This is a suit in equity to declare an equitable lien on real estate. The amount involved is $23,650, the purchase price of the property. The decree was in favor of the defendant and the plaintiff has appealed.

The plaintiff, Goldie Wilkinson, is a sister of John Nolan Tarwater who died August 10, 1960, at the age of sixty-two; the defendant, Margaret Mary Tarwater, is the widow of Mr. Tarwater. In 1957 Mr. and Tarwater were living with their two daughters at 3834 College Avenue in Kansas City. Because of their dissatisfaction with the changing character of the neighborhood, they began looking for a new home. Mr. and Mrs. Tarwater were accompanied on some of their house hunting trips by Mrs. Wilkinson who had inherited about $40,000 in corporate stock from her husband who in turn had inherited it from an aunt shortly before his death. Eventually the house in question located at 206 West 65th Terrace North in Clay County was found and purchased. It is undisputed that Mrs. Wilkinson furnished the entire purchase price of the house. She gave her brother, Mr. Tarwater, a check for $500 for the down payment when the purchase contract was signed on June 27, 1957. When the deed was delivered on July 22, 1957, she wrote two additional checks, one for $14,500 and the other for $8,648, which

paid the purchase price in full. The grantees in the deed were Margaret Mary Tarwater, John Nolan Tarwater, and Goldie Wilkinson, as joint tenants with right of survivorship and not as tenants in common. The Tarwaters moved in and occupied the house as their home. Mrs. Tarwater continued to live there after the death of her husband in August 1960. Mrs. Wilkinson's theory is that the sum of $23,500 paid by her was a loan to Mr. and Mrs. Tarwater which was to be repaid from the proceeds of the sale of the College Street house and the balance at the rate of $100 per month. Mrs. Tarwater denies that the money was a loan and says it was a gift to her and her husband. Mrs. Tarwater concedes that she and Mrs. Wilkinson now own the property as joint tenants. They were the only witnesses in support of their respective contentions.

Mrs. Wilkinson testified that the Tarwaters on several occasions took her along when they were looking at homes, that she had seen the house in question about three times before it was purchased. The way the Tarwaters were supposed to "handle this transaction" according to Mrs. Wilkinson was that "they were supposed to sell their house on College and give me the money from that house and a hundred dollars a month." The house occupied by the Tarwaters on College had been owned by Mrs. Tarwater's mother, but before the mother's death title had been transferred to Mrs. Tarwater and her brother. When the house was sold, Mrs. Tarwater realized about $4,500 as her share of the proceeds of the sale.

Mrs. Wilkinson further testified that the title to the property in question was made out to her and the Tarwaters because "I wanted to have a little security that I had put the money up"; that before she advanced the money the Tarwaters had told her that they would repay it; that about three years before the trial, the Tarwaters came to her home and asked her for the two cancelled checks given when the purchase was completed, and she gave them the checks; that at the time of death of Mrs. Tarwater's mother, which according to the evidence occurred in August 1958, Mrs. Wilkinson found out that the house on College had been sold; that she did not receive any of the proceeds of the sale or any other payment from the Tarwaters, and that she made demand on the Tarwaters but she did not give the date or the circumstances under which the demand was made.

Bearing on her theory of the case, Mrs. Tarwater testified that her husband was a printer for the Kansas City Star earning $125 per week and they figured they "could handle" a house costing between $12,000 and $15,000 and they were chiefly looking at houses in that price range; that Mrs. Wilkinson telephoned on a day that Mr. Tarwater was off from work, Mrs. Tarwater answered the telephone and Mrs. Wilkinson asked her whether she would still like to have the house on West 65th Terrace and Mrs. Tarwater told her she would; that Mrs. Wilkinson then asked if Nolan was there and Mrs. Tarwater called him to the telephone. Later that day, the Tarwaters picked up Mrs. Wilkinson and the three of them went over and looked at the house again, then went by the real estate company and found out about the price, the property lines, restrictions and such matters. Thereafter, Mrs. Wilkinson stated in Mrs. Tarwater's presence that she "was going to give us that because she had, was getting all this money and later on she would give the others something; that for us not to say a word about it to anyone because it was none of their business." Mrs. Wilkinson has three brothers in addition to Nolan. She had no sisters living. Her mother and father were dead and she did not have any children. Later the Tarwaters and Mrs. Wilkinson went to the real estate company, made the down payment, and signed the earnest money contract. In the words of Mrs. Tarwater,

"We were in there signing the paper, it's a small paper, and my husband signed it and I signed it, and Goldie [Mrs. Wilkinson] got up and came over and she says, 'I'm going to put my name on there too.' She says, 'If anything would happen to you,'—then referring to my husband—'and she remarried, her husband would be enjoying that property.'" Mrs. Wilkinson then signed the purchase contract along with Mr. and Mrs. Tarwater. Mrs. Tarwater denied that she or anyone in her presence ever stated to Mrs. Wilkinson that the money she was advancing would be repaid in any manner, and said she and her husband never made any agreement that the property would be security for repayment of the money.

Mrs Tarwater further testified that she had lived in the house continuously since it was purchased; that Mrs. Wilkinson had visited in the home and that no demand was made for the repayment of the money advanced until August 27, 1962, when the plaintiff filed suit in Jackson County which was dismissed because of venue and the present action was filed in Clay County; that she never agreed to convey or transfer the proceeds of the sale of the College Avenue property to Mrs. Wilkinson; that she and her husband made improvements on the 65th Terrace property such as putting in a retaining wall, partitioning and remodeling the basement and carpeting the house throughout; that the cost of carpeting and building the retaining wall was paid out of her share of the money received from the sale of the College Avenue property; that she knew Mrs. Wilkinson was not independently wealthy and had worked until her mother took sick; that she, Mrs. Tarwater, and her husband looked at a number of houses in the $25,000 range if such houses happened to be in the addition in which they were looking, but that she had no expectation that they would be able to buy a house in that price range.

Mrs. Tarwater further testified that she realized that Mrs. Wilkinson became a part owner of the property by putting her name on the warranty deed and that was all right with her. Mrs. Tarwater denied that she made any statement that Mr. Tarwater's life savings were invested in the house and denied that she and Mr. Tarwater went by the plaintiff's house and asked for the cancelled checks. Mrs. Tarwater thought that the plaintiff had an interest in the property because her name was on the deed. She further testified on cross-examination that Mrs. Wilkinson had said that she put her name on the property so that "she would have security for the money that she had advanced" to pay for the property.

In rebuttal Mrs. Wilkinson testified that after Mr. Tarwater's death she called Mrs. Tarwater and asked what she intended to do about the property and Mrs. Tarwater said she didn't know what she was talking about, that Nolan had his life savings in the house and that it was hers. Mrs. Wilkinson further said that her brother Nolan became upset every time she called and talked to him; that she and her husband were working people and had worked all of their lives. Also Mrs. Wilkinson denied that she had said she would take care of her other brothers later.

The first of plaintiff's points on appeal is that the trial court erred in not declaring an equitable lien on the property in question because the weight of the credible evidence clearly indicated that there was an agreement that the money advanced by the plaintiff was a loan and not a gift, and the circumstances warranted the imposition of a lien on the property. In her written argument the plaintiff asserts that she was unable to find a case in this state where the fact situation closely parallels that of this case and that she has had to go outside this jurisdiction for her authorities. She cites six cases from other jurisdictions which we have examined. The facts and other con-

siderations are so dissimilar to those in this case that the cases are not persuasive of the disposition of this appeal. A discussion of the facts and holdings in the cases cited would serve no useful purpose in this opinion since the principles here involved are not novel and there are decisions of the courts of this state that are applicable and controlling. The only Missouri decision cited by the plaintiff is Hahn v. Hahn, Mo., 297 S.W.2d 559, which is also relied on by the defendant.

The doctrine of "equitable lien" applies only in cases where the law fails to give relief and justice would suffer without the equitable remedy, but the doctrine has prescribed boundaries and generally there must be an express agreement, or conduct or dealings of the parties from which an intention may be implied, that some specific property shall be appropriated as security for a debt or obligation before equity will consider that a lien should be declared on the property. Hahn v. Hahn, Mo., 297 S.W.2d 559, 565 [3]; Williams v. Vaughan, 363 Mo. 639, 253 S.W.2d 111, 115 [7]; Welbon v. Rigdon, Mo., 231 S.W.2d 127, 134 [12]; Jamison Coal & Coke Co. v. Goltra, C.C.A.Mo., 143 F.2d 889, 893 [5], 154 A.L.R. 1191, cert. den. 323 U.S. 769, 65 S.Ct. 122, 89 L.Ed. 615; Hutson v. Long Bell Lumber Co., D.C.Mo., 1 F.Supp. 468, 480 [7]; 33 Am.Jur., Liens, § 18, p. 427; 53 C.J.S. Liens § 4, p. 836.

An equitable lien cannot be based on moral obligations alone but must rest on established equitable principles, and a failure to repay money as agreed, standing alone, is not sufficient reason for equity to intervene to declare an equitable lien. Hahn v. Hahn, Mo., 297 S.W.2d 559, 565 [4, 5].

An equitable lien is not an estate in the property itself but is merely a charge on it for the purpose of security. Jamison Coal & Coke Co. v. Goltra, supra, 143 F.2d 889, 893 [5, 6].

From the foregoing statement of legal principles, it is apparent that the creation of an equitable lien contemplates a debt or obligation combined with an intention, express or implied, to appropriate certain property as security for the payment of the debt or obligation. In fact the plaintiff recognizes this rule in the statement of her first point but contends the evidence was sufficient to prove a debt and that "the relations and dealings of the parties involved surely warranted the imposition of said lien."

Appellate review in this kind of case is subject to these rules and statutory admonitions: "The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Civil Rule 73.01(d), V.A.M.R.; § 510.310, subd. 4 RSMo 1959, V.A.M.S. It is further provided that: "No appellate court shall reverse any judgment, unless it believe that error was committed by the trial court against the appellant, materially affecting the merits of the action." Civil Rule 83.13(b); § 512.160, subd. 2, RSMo 1959, V.A.M.S.

We are convinced by our consideration of the evidence that the advancement of the purchase price of the real estate in question did not create a debtor-creditor relation but was a gift subject to the conditions and limitations of an estate of joint tenancy; and furthermore that there was no intention, express or implied, that the property be charged with a lien for the payment of any debt or obligation.

The most serious conflict in the evidence relates to whether the transaction resulted in a creation of a debt. The plaintiff testified in effect that she advanced the purchase price of the property as a loan which Mr. and Mrs. Tarwater

agreed to repay at the rate of $100 per month plus Mrs. Tarwater's share of the proceeds of the sale of the house in which the Tarwaters were then living. This was denied by Mrs. Tarwater and the facts to which she testified would justify the finding that the money advanced was a gift contingent upon Mr. or Mrs. Tarwater being the ultimate survivor in which event he or she would have had the whole title free from the estate of Mrs. Wilkinson as a joint tenant. Another factor that mitigates against the reasonableness of Mrs. Wilkinson's version is that she made no effort to enforce collection of her claim of debt for more than three years during the lifetime of her brother. Thereby the benefit of Mr. Tarwater's testimony was lost. The plaintiff did not offer a satisfactory explanation of her failure to do so. Furthermore, she did not file suit until more than two years after Mr. Tarwater died. The construction that the parties place upon a contract or an agreement as evidenced by the acts and conduct is strong evidence of the real intention of the parties. Radford v. Radford, Mo., 388 S.W.2d 33, 38 [4]; Rebmann v. Rebmann, Mo., 384 S.W.2d 663, 666 [4]. We are persuaded on the entire record that the claim of the plaintiff that she was entitled to the repayment of the amount advanced was an afterthought.

■ We are convinced that Mrs. Wilkinson got all the "security" intended by including herself as one of the joint tenants holding title to the property. By reason of her being a joint tenant, she has an estate in the property which could conceivably ripen into sole ownership by reason of her surviving Mr. and Mrs. Tarwater. Thus she is in the anomalous position of claiming a charge on real estate of which she is one of the joint tenants and might ultimately be the sole owner. Since Mrs. Wilkinson freely consented and intended when the real estate was purchased that title should be taken in the names of Mr. and Mrs. Tarwater and herself as joint tenants, she must be charged with full knowledge of the effect of such a deed and on the whole record has no standing to claim that she is also entitled to an equitable lien. Hahn v. Hahn, Mo., 297 S.W.2d 559, 566 [9]; Cisel v. Cisel, 352 Mo. 1097, 180 S.W.2d 748, 750 [2].

The second and last assignment in plaintiff's brief is that the trial court erred in denying relief to the plaintiff because the property in question was distinctly appropriated as security for the debt. What we have held with respect to the first contention also disposes of this other point sought to be made. We conclude, as the trial court did, that the plaintiff was not entitled to an equitable lien on the property.

■ The decree of the trial court in addition to denying the equitable lien ordered partition of the property. There was undoubtedly a counterclaim seeking partition on file because plaintiff's reply refers to it; however, no such pleading is included in the transcript. The issue of partition was tried and adjudicated, and neither the motion for new trial nor the brief complains about that part of the decree; hence there is nothing for us to review in that regard.

We have considered all of the questions presented on appeal and find them to be without merit. Accordingly the judgment is affirmed.

All of the Judges concur.